Kenneth W. JONES, Sr., Appellant,

v.

ALASKA WORKMEN'S COMPENSA-
TION BOARD, Fluor Alaska, Inc., and
Alaska Pacific Assurance Company, Ap-
pellees.

No. 4305.

Supreme Court of Alaska.

Sept. 21, 1979.

John B. Patterson, Anchorage, for appel-
lant.

Charles P. Flynn, Burr, Pease & Kurtz,
Inc., Anchorage, for appellees Fluor Alaska,
Inc. and Alaska Pacific Assur. Co.

Before CONNOR, BOOCHEVER,
BURKE and MATTHEWS, Justices, and
RIPLEY, Judge.

OPINION

PER CURIAM.

After Kenneth Jones suffered a severe
attack of angina pectoris [1] while working on
the Alaska oil pipeline, he underwent coro-
nary artery surgery at Stanford University
Hospital in California. The Alaska Work-
men's Compensation Board (hereinafter
"Board") denied his claim for temporary
total disability compensation on the
grounds that his disability was caused solely
by his atherosclerosis, or hardening of the
arteries, and that the factors bringing on
the angina attack did not affect this under-
lying condition. The Board's decision was
affirmed by the superior court. We con-
clude that substantial evidence supports the
Board's finding that Jones' work-induced
angina did not "aggravate, accelerate or
combine with" [2] his artery problem to ne-
cessitate surgery. But we find no evidence
to support the Board's ruling that the angi-
na caused no disability at all. Hence we
must reverse the decisions below.

On December 20, 1976, Jones was em-
ployed by Fluor Alaska, Inc. ("Fluor") near
Valdez as a crane operator on the pipeline.
Because of a strike by Teamsters' bus driv-
ers, Jones and his co-workers were forced to
walk about two miles uphill to their job
site. The weather was cold and the footing

1. One doctor testifying in this case described
angina pectoris as "just a fancy word for pain"
in the chest. He explained that it arises "when
there is a lack of sufficient oxygen and fuel
supply to the heart muscle," due to the heart's
need for extra fuel and/or the diminishing of

normal circulation because of hardening of the
arteries.

2. *Thornton v. Alaska Workmen's Compensa-
tion Bd.,* 411 P.2d 209, 210 (Alaska 1966). *See
also,* 1 Larson, *The Law of Workmen's Com-
pensation,* § 12.20 at 3–276 (1978).

treacherous, and most people were having difficulties climbing. It took Jones about twenty-five minutes to walk up the hill, and during the climb, he developed severe chest pains. Jones went to the aid station after arriving at the camp. He was subsequently evacuated to Valdez hospital, and then to Providence Hospital in Anchorage, where he was given oxygen and put on a heart monitor. Jones remained at Providence for three days, and was sent home. After a few days at home, Jones received a phone call from Dr. DeBusk at Stanford, who had treated him earlier for coronary artery disease. Dr. DeBusk advised Jones to come to Stanford for surgery, and Dr. Rhyneer, who had treated Jones at Providence Hospital, agreed. At Stanford, Jones underwent coronary bypass surgery to correct his artery condition. No complications followed, and he was returned home to Kenai to rest.

Evidence and testimony introduced at the Board hearing showed that Jones had had a lengthy history of heart trouble, beginning in 1970. In June, 1975, after increasingly frequent occurrences of chest pain, he was admitted to Stanford. An angiography (vessel analysis) indicated his underlying problem, but Jones apparently declined surgery at that time. He was instead put on a program of "medical management," with extensive medication and instructions to see his doctor in Alaska once a month. Between his hospitalization and the incident at issue here, Jones seems to have had no major heart problems.

Jones submitted a timely claim for workmen's compensation, which was controverted by Fluor's compensation insurance carrier, Alaska Pacific Assurance Co. ("ALPAC"). He claimed temporary total disability from December 20, 1976, to some unspecified time no earlier than the Board hearing date, August 18, 1977. Four months after the hearing the Board denied Jones' claim. On September 7, 1978, Judge Buckalew affirmed. This appeal followed.

The medical evidence before the Board was essentially uncontradicted. All three doctors[3] agreed that Jones' forced climb caused his angina attack. But the two doctors who expressed opinions both stated unequivocally that the exertion producing the angina did not increase or accelerate Jones' need for the bypass operation. Dr. DeBusk wrote, "I cannot support the thesis that the event of December 20, 1976, resulted in the need for coronary artery surgery." Dr. Rhyneer wrote, "In reality this case was no different than it was back in 1975. The only difference is that during the intervening two years his condition naturally became worse as this is the natural history and the natural course of coronary artery atherosclerosis."

Jones has cited us to numerous cases which he claims support his position that the cost of his bypass surgery and his resulting disability are both compensable. All of those cases are distinguishable. In *Hawkins v. Green Associated,* 559 P.2d 118 (Alaska 1977), we upheld a Board finding that Hawkins' spinal fusion operation and subsequent disability were compensable, even though Hawkins had been scheduled for this surgery before his on-the-job injury. But that decision rested on the fact that the injury aggravated his back problem, so that he could no longer postpone the surgery. Sufficient medical evidence here showed no such aggravation. In *Hartford Accident & Indemnity Co. v. Thurmond,* 527 S.W.2d 180 (Tex.Civ.App.1975), the court did approve a jury decision holding compensable bypass surgery to correct severe occlusive disease of the arteries, and the disability resulting from that surgery. But the medical testimony in that case was far more favorable to the claimant than that involved here. Thus, the claimant's medical expert explicitly testified that Thurmond's need for surgery arose out of the industrial accident, *Id.* at 189, notwithstanding Thurmond's history of heart problems. And even the carrier's expert conceded that angina and coronary insufficiency may cause

---

3. Dr. Rhyneer, who treated Jones in Anchorage after his evacuation; Dr. DeBusk, a doctor at Stanford; and Dr. Isaak, Jones' doctor in Ke-nai. Dr. Rhyneer's deposition was before the Board, as were letters from all three doctors to Jones' attorney.

damage to the heart muscle that cannot be measured, and thus prevent complete reversion to the victim's pre-angina state. *Id.* at 186–87. Furthermore, the appellate court in *Thurmond* was reviewing a jury verdict in favor of the claimant; hence the evidence was viewed most favorably to him. The opposite situation is present here. The other cases Jones cites either rest, like *Hawkins,* on medical evidence establishing aggravation of the claimant's underlying condition, or involve temporary disabilities arising solely from angina, and not from measures to cure the underlying condition.

The last group of cases, however, does firmly support Jones' claim that his December 20 angina attack was by itself temporarily disabling. *See Canning v. State Department of Transportation,* 347 A.2d 605 (Me.1975); *Seals v. Potlatch Forests, Inc.,* 151 So.2d 587 (La.App.1963).[4] Jones' evacuation to Anchorage, his hospitalization there and his doctor-ordered rest at his home in Kenai were all the direct results of the angina attack, and hence compensable. No evidence suggested that Jones should have or could have returned immediately to work following the attack. We cannot accept ALPAC's apparent position that angina, being only a symptom of the underlying atherosclerosis, can never by itself produce disability. This position ignores the fact that Jones was able to work before the attack but not afterward, and is inconsistent with case law as indicated above.[5] We therefore must reverse the decision of the superior court, and remand the case to it, with instructions to remand to the Board for determination of the period Jones was temporarily, totally disabled as a result of his employment and for assessment of the benefits due him for this period. This necessarily requires a finding by the Board of how long

Jones would have been disabled had he not undergone the bypass operation.[6]

REVERSED and REMANDED.

RABINOWITZ, C. J., not participating.

BOOCHEVER, Justice, concurring.

Neither the briefs filed in this case nor the opinion addresses an issue, which I believe must be resolved—whether Jones is entitled to compensation for the period that his temporary total disability attributable to his employment overlaps the period during which he would not otherwise have been available for employment due to the non-work related surgery. Few cases address this issue.

In *Electronic Associates, Inc. v. Heisinger,* 111 N.J.Super. 15, 266 A.2d 601 (1970), an employee who quit her job because of pregnancy was required to undergo surgery to her wrist because of a job related disability. The court held that her reason for terminating employment, namely her pregnancy, was unrelated to the employment. *Id.* at 604. Since her right to receive wages ceased before the onset of her disabling occupational disease, she suffered no wage loss, and the court concluded that she was not entitled to temporary disability compensation. *Id.*

Subsequently, in *Tamecki v. Johns-Manville Products Corp.,* 125 N.J.Super. 355, 311 A.2d 20 (1973), the court took the same position in a case very similar to that of Jones. Tamecki, who had completed his first year of college, was injured while working during the summer. The injury necessitated emergency surgery. In September, he returned to college as a full time student. During the next year, he had to undergo reconstructive surgery several times. He was awarded temporary disability benefits for this period until he returned to school, but the appellate court refused to

---

4. In *Seals* the employer presented testimony much like Dr. Rhyneer's here, that each attack of angina is a "self limited thing" resulting in no damage to the vessels or heart absent an infarct (heart attack). 151 So.2d at 590.

5. Indeed, in one case, *Wheeler v. Indus. Comm'n,* 382 P.2d 675 (Ariz.1963), the claimant was awarded six months of disability benefits

for "temporary aggravation of his pre-existing coronary artery disease." *Id.* at 677.

6. We realize that this determination will necessarily be somewhat speculative, but we find that an equitable resolution of this case requires it. Because this question was not clearly presented in the previous proceedings, the Board may wish to receive additional evidence.

allow additional compensation for the period until his final discharge by the doctor when his condition became fixed. The court reasoned that he was unavailable for work because of his college program. *Id.* at 22.

With all due respect to the New Jersey court which decided *Tamecki,*[1] I believe that where a worker is disabled from employment because of work connected disability, he should be entitled to utilize the period during which he is necessarily disabled from work to further his education, to take care of any medical treatment or to engage in any similar activity without forfeiting his compensation benefits. I therefore would hold that Jones is entitled to temporary disability payments for the period which he would have been disabled as a result of the work connected angina attack even though that period may overlap the period of his disability attributable to the surgery.

---

1. Different considerations may be applicable where, as in *Electronic Associates,* an employee terminates employment for non-work related reasons before the onset of any disability. It is not necessary for us to pass on that question. *But see Vetter v. Alaska Workmen's Comp. Bd.,* 524 P.2d 264, 266–67 (Alaska 1974).