The ESTATE OF Gene ENSLEY, Deceased, Appellant,

v.

ANGLO ALASKA CONSTRUCTION INC. and Scott Wetzel Services, Inc., Appellees.

No. S–2670.

Supreme Court of Alaska.

May 12, 1989.

---

Chancy Croft, Anchorage, for appellant.

Richard L. Waller and Alex Vasauskas, Stone, Waller & Jenicek, Anchorage, for appellees.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

MOORE, Justice.

The estate of Gene Ensley appeals from a superior court decision which affirmed a decision of the Alaska Workers' Compensation Board (Board) which terminated Ens-ley's temporary total disability (TTD) benefits as of February 10, 1984. The issue before this court is whether the board erred in denying Ensley continued TTD benefits for a work-related injury due to the fact he could no longer work as a result of medical treatments for nonwork-related cancer. For the reasons set forth below, we reverse the board's decision and remand the case to the board for determination as to the date when Ensley's back condition no longer constituted a TTD.

### I.

Gene Ensley was a heavy equipment mechanic employed by Anglo Alaska Construction, Inc. (Anglo) on the North Slope. He injured his back on December 7, 1984 when he was knocked from a scraper, struck his right hip on a pull hitch in his descent, and landed on his back. After returning from the North Slope to Washington State, Ensley was treated by Dr. Lyzanchuk. Dr. Lyzanchuk diagnosed the injury, on February 16, 1985, as a traumatic dorsal thoracic lumbar strain, acute dorsal myospasm of the thoracic lumbar segments, sacroiliac strain and lumbar strain involving the low back.

In mid-January of 1985, Ensley was diagnosed as having cancer [1] which apparently commenced in the lungs and was unrelated to employment. Dr. Lyzanchuk stated on February 4, 1985 that although Ensley was unemployable because of the back injury, he was also unemployable because of the unrelated cancer condition predicted to end his life within three to six months. Ensley flew to the Bahamas where he underwent cancer treatment from February 10, 1985 through April 18, 1985.

When Ensley returned home to Washington, he underwent radiation therapy until May 17, 1985. On May 18, 1985 he was hospitalized due to the effect of the cancer and its treatment. He returned to the clinic in the Bahamas for cancer treatment in early June 1985 and remained there until June 29, when he returned to Washington. Ensley died of cancer on July 11, 1985.

---

1. Metastatic grade III squamous cell carcinoma.

The last physician's note in the record referring to treatment of Ensley's low back strain is dated April 25, 1985.

Ensley's claim for workers' compensation benefits was originally controverted by Anglo on the ground that he had not sustained a disabling injury while on the job. Ensley filed an Application for Adjustment of Claim on January 23, 1985. Anglo later asserted the additional defense that Ensley was not working due to terminal cancer and not because of the work-related injury.

A hearing was held before the Board on September 5, 1985. In its Decision and Order, the Board found that Ensley did suffer a disabling injury in the course of his employment. However, the Board only awarded TTD compensation through February 9, 1985, stating:

> We find that from December 22, 1984 to and including February 9, 1985, Employee was disabled as a result of his December 7, 1984 work-related injury. On February 10, 1985, Employee flew to Freeport, Grand Bahamas to undergo cancer treatment. As of that date his medical treatment was entirely directed toward the cancer. His back injury was no longer being treated. We conclude that as of February 10, 1985, Employee's "disability", as defined in AS 23.30.265(10), was due to his cancer not his work-related injury.

Ensley's estate appealed this decision to the superior court, claiming that the Board erred in failing to award temporary disability benefits from February 10, 1985 until Ensley's death on July 11, 1985. The superior court affirmed the Board, holding that since the cancer would have forced Ensley into permanent retirement notwithstanding any back injury, he did not suffer any economic injury that could be redressed under the Alaska Workers' Compensation Act (the Act) after February 9, 1985. Ensley's estate appeals the superior court's decision.

**2.** The Board's statement that the back injury was no longer being treated after February 10, 1985 and that as of that date Ensley's medical treatment was "entirely directed toward the cancer" is contrary to the evidence in the record.

## II.

The estate argues that the Board erred as a matter of law in concluding that Ensley's disability as defined in AS 23.30.-265(10) was a result of his nonwork-related cancer and not his work-related back injury. While the Board justifies its conclusions by discussing whether the back injury was being treated,[2] the board also impliedly found that Ensley's disability—i.e. his inability to earn wages—was due to the cancer. *Id.* As the superior court noted:

> From an analysis of the decision, it can be ascertained the board found that Mr. Ensley was no longer available for work as of February 10, 1985. The cancer was a supervening cause analogous to death which terminated the employee's economic life. The board's finding is supported by substantial evidence, the uncontested treatment for cancer.

We initially note that disability is specifically defined within the Act and, therefore, should be construed in light of the statutory definition. *See Alaska Int'l Constructors v. Kinter,* 755 P.2d 1103, 1104 (Alaska 1988). The Act defines disability as the "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." AS 23.30.265(10). In *Vetter v. Alaska Workmen's Compensation Board,* 524 P.2d 264, 266 (Alaska 1974), this court defined disability in terms of earning capacity:

> The concept of disability compensation rests on the premise that the primary consideration is not medical impairment as such, but rather loss of earning capacity related to that impairment. An award for compensation must be supported by a finding that the claimant suffered a compensable disability, or more precisely, a decrease in earning capacity due to a work-connected injury or

The Board's findings are therefore not supported by substantial evidence. Thus, these findings are not an appropriate basis for the Board's conclusion that Ensley's disability was due to his cancer, not his work-related injury.

illness.[3]

We believe the Board erred by failing to consider whether Ensley's back condition constituted a disability regardless of his treatment for cancer. Liability for workers' compensation benefits will be imposed when employment is established as a causal factor in the disability. *Burgess Constr. Co. v. Smallwood (II)*, 623 P.2d 312, 317 (Alaska 1981). A causal factor is a legal cause if it is a substantial factor in bringing about the harm or disability at issue. *Id.* In the case of a preexisting condition associated with a disability, a claim is compensable upon a showing that employment (1) aggravated, accelerated, or combined with a preexisting condition so as to be (2) a substantial factor in bringing about the disability. *Id.*

In this case, however, we are confronted with a unique situation. The medical records indicate that Ensley suffered from two independent conditions—one work-related and one not—either of which would have prevented him from working. We believe the Board erred in ignoring Ensley's temporary loss of earning capacity due to the work-related back injury. The fact that Ensley also suffered a concurrent total loss of earning capacity due to the cancer does not destroy the causal link between the work injury and his temporary total loss of earning capacity.

Anglo cites a number of cases holding that an employee who voluntarily removes herself from the work force is no longer entitled to TTD benefits.[4] For example, in *Vetter*, 524 P.2d 264, the employee suffered a work-related injury but did not return to work for personal reasons. The court held that

> [i]f a claimant, through voluntary conduct unconnected with his injury, takes himself out of the labor market, there is no compensable disability.... Total disability benefits have been denied when a partially disabled claimant has made no bona fide effort to obtain suitable work

when such work is available. And, a claimant has been held not entitled to temporary total disability benefits even though she had a compensable injury when she had terminated her employment because of pregnancy and thereafter underwent surgery for the injury. Since the compensable injury was not the reason she was no longer working, temporary disability benefits for current wage losses were denied.

524 P.2d at 267 (footnotes omitted).

The superior court concluded that Ensley's cancer in effect forced him into involuntary retirement. Analogizing this situation to the one in *Vetter*, the superior court concluded that Ensley no longer suffered a loss of earning capacity after the onset of cancer.

We conclude that *Vetter* does not control this case. An employee's voluntary departure from the work force is not analogous to the situation where a terminal illness prevents an already totally disabled individual from returning to work. A more appropriate analogy exists in *Jones v. Alaska Workmen's Compensation Board*, 600 P.2d 738 (Alaska 1979). In *Jones*, the employee suffered from a nonwork-related condition—atherosclerosis, or hardening of the arteries. As a result of a forced climb at work in cold conditions, the employee suffered an angina attack and subsequently underwent coronary artery surgery for the atherosclerosis. The Board denied his claim for TTD compensation on the grounds that his disability was caused solely by his atherosclerosis, and that the factors bringing on the angina attack did not affect this underlying condition. This court noted that the work exertion which produced the attack did not increase or accelerate the employee's need for the bypass operation. *Id.* at 739. However, we reversed the board's conclusion that Jones's angina did not constitute a basis for a TTD award and remanded the case to the board for a determination of how long

---

3. *See also Ketchikan Gateway Borough v. Saling,* 604 P.2d 590 (Alaska 1979).

4. *See Vetter,* 524 P.2d at 266; *Electronic Assoc. v. Heisinger,* 111 N.J.Super. 15, 266 A.2d 601 (N.J.App.1970); *Karr v. State Acc. Ins. Fund,* 79 Or.App. 250, 719 P.2d 35 (1986).

959

Jones would have been disabled had he not undergone the bypass surgery. Justice Boochever, in his concurring opinion, specifically acknowledged that this period of compensation necessarily included any overlap with the time in which Jones underwent the operation for the independent disability. *Id.* at 741. The court in *Jones* therefore allowed an employee to receive temporary disability benefits during a period in which he was also totally disabled as the result of treatment for a nonwork-related medical condition.

Although there is little case law on this question in other jurisdictions, the Washington Court of Appeals reached a similar result in *Shea v. Department of Labor and Industries,* 12 Wash.App. 410, 529 P.2d 1131 (1974). In *Shea,* the court considered whether an employee with two independent totally disabling conditions, one work-related and the other not, was entitled to permanent total disability benefits.[5] The department argued that Shea was no longer entitled to benefits because several years prior to the time the department closed his claim, he was in fact totally and permanently disabled as a result of disabilities entirely unrelated to his work injury. Shea argued that he should not be denied benefits "where the evidence establishes that he is totally and permanently disabled as a result of his industrial injury[,] simply because another *totally* unrelated condition *also* rendered him *totally* and permanently disabled prior to the last closing of his industrial claim." *Id.* 529 P.2d at 1133 (emphasis added). The court agreed with Shea and remanded the case to the depart-

ment to determine whether or not he was totally and permanently disabled as a result of the 1964 industrial injury. *Id.* In rejecting the department's position that the nonwork-related disability prevented an award of disability compensation, the court relied upon the notion that the compensation act was designed to provide benefits "not only to workmen with no prior physical or mental impediments, but also to workmen who may be afflicted with preexisting physical or mental infirmities or disabilities." *Id.* Secondly, the court stated that "the remedial and beneficial purposes of the act should be liberally construed in favor of workmen and beneficiaries." *Id.*

We agree with the reasoning of *Shea.* The Act was designed to be a liberal remedial scheme to partially compensate workers for lost wages due to employment related disabilities. *Hewing v. Kiewit & Sons,* 586 P.2d 182, 187 (Alaska 1978). We conclude that the remedial policy of the Act is furthered by providing compensation for temporary disabilities even when a concurrent unrelated medical condition has also rendered the worker unable to earn his or her normal wages. To construe the Act so as to deny coverage would create a windfall to employers simply because of the employee's misfortune in developing an independent medical problem.[6]

In this case, the medical evidence indicates that Ensley may have suffered from a TTD as a result of his job-related back injury, regardless of whether he contracted cancer. We conclude that Ensley is entitled to TTD payments for the period in

---

**5.** In Washington, as in Alaska, permanent total disability benefits are based upon "loss of earning power." *Shea,* 529 P.2d at 1134. *Compare Electronic Assoc.,* 266 A.2d at 604 (New Jersey's permanent disability benefits based upon "physical disability suffered ... irrespective of any loss of earning power").

**6.** Arguably, coverage should be denied if the employee's disease or condition was known at the time of the industrial accident. In tort law, it has been held that an existing disease or a prior accident which reduces the plaintiff's life expectancy will limit accordingly the value of the life in an action for wrongful death. Then what is the value of a burning house which the defendant prevents a fire engine for

extinguishing, or one in the path of a conflagration which the defendant destroys? What damage has the plaintiff suffered when defendant blocks the passage of the plaintiff's barge into a canal in which passage was already blocked by a landslide?

Value is an estimate of worth at the time and place of the wrong. It is obvious that if such factors as these are to be considered as reducing value, they must be in operation when the defendant causes harm, and so imminent that reasonable persons would take them into account.

W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on the Law of Torts* § 52, at 353 (5th ed. 1984).

which his back condition would have prevented him from working regardless of the fact he was also undergoing cancer treatment. The Board did not make the factual finding that his back condition no longer prevented him from returning to work; rather the Board relied on the fact that he subsequently underwent cancer treatment to justify its decision that he was no longer disabled.

### III.

We therefore REVERSE the superior court's affirmance of the Board's decision and REMAND to the superior court with directions to remand to the Board with directions to the Board to reverse and vacate its decision and for the Board to determine on which date Ensley's back condition no longer constituted a TTD.[7]

---

**7.** Since resolution of this issue resolves this case, we do not reach the issue as to whether the board erred by failing to apply the presumption of compensability in this case.