Charles CORTAY, Appellant,

v.

**SILVER BAY LOGGING, Alaska Timber Insurance Exchange, and Alaska Workers' Compensation Board, Appellees.**

No. S–3014.

Supreme Court of Alaska.

Feb. 9, 1990.

Patrick E. Murphy, Batchelor, Murphy & Brinkman, Juneau, for appellant.

Paul M. Hoffman, Robertson, Monagle & Eastaugh, P.C., Juneau, for appellees Silver Bay Logging and Alaska Timber Ins. Exchange.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

OPINION

MOORE, Justice.

Charles Cortay appeals the judgment of the superior court affirming the Alaska Workers' Compensation Board ("Board") order denying him temporary total disabili-

ty ("TTD") benefits for lost wages due to a work-related injury. The Board denied Cortay benefits on the grounds that Cortay was able to work and that he left work in order to care for his wife who also had suffered a work-related injury. For the reasons set forth below, we hold that the Board's finding that Cortay was able to work despite his work-related injury is not supported by substantial evidence. This holding, however, does not dispose of this appeal since the Board also found that Cortay was unavailable to work for reasons independent of his injury. We are left with the question whether the Board erred in denying Cortay TTD benefits for a disabling work-related injury because Cortay used the time during which he was disabled to care for his wife. We believe that a disabled employee should not be denied benefits because he chooses to engage in an activity that also would render him unavailable for work. Therefore, we reverse the Board's decision and remand the case for a determination of the proper amount of TTD benefits from May 6, 1987, the date time-loss was authorized, to the time Cortay's back condition no longer rendered him unable to work.

## I.

Charles Cortay was employed by the Silver Bay Logging Company ("Silver Bay") as the head cook at the company's logging camp in Cube Cove, Alaska. Cortay worked seven days a week, fourteen hours a day during the logging season. On July 19, 1986, Cortay injured his back while unloading four to five thousand pounds of goods. After being examined by Dr. Huttenlocher in Juneau and receiving pills for pain, Cortay returned to work at the logging camp. Although Cortay did not feel fully recovered from the July 1986 injury, he returned to the camp as head cook in February 1987. On March 13, 1987, Cortay suffered the injury which is the subject of this case. Cortay slipped on an icy board and fell seven or eight feet into some rocks below. Cortay landed on his right heel which struck a sharp rock. On April 2, 1987, Cortay saw Dr. Ceder concerning pain in his right heel and pain in his mid-

back that developed five days after the fall. Dr. Ceder found degenerative changes in Cortay's back and diagnosed a contusion of the right heel and a back strain. Dr. Ceder released Cortay for work with "lifting and walking to tolerance."

Cortay returned to work and continued his duties as head cook even though he was in substantial pain. During this period, Cortay received some assistance in lifting heavy items, and another worker was assigned to the kitchen a couple of afternoons a week. There is no evidence that Cortay's hours were reduced after the accident.

On April 18, 1987, Pearl Cortay, Cortay's wife, fractured her ankle while working at the logging camp. At his employer's instructions, Cortay accompanied his wife to Juneau to seek medical care. Soon thereafter, Cortay returned to the logging camp and resumed work for four days. On April 24, 1987, Cortay informed Silver Bay's owner, Dick Buehler, that he would need to take his wife to his permanent home in Cathlamet, Washington. Cortay testified that he intended to return to work and that Buehler specifically asked Cortay to call him in a few weeks to inform him of a time frame for his return.

While in Washington, Cortay saw a chiropractor, Dr. Finley, about his continuing pain. In his report of May 6, 1987, Dr. Finley diagnosed various injuries to Cortay's back and foot. Dr. Finley recommended treatment for three to four months and authorized time loss from May 6, 1987 until further advised. Cortay then informed Glenn Van Treece, the office manager at Silver Bay, of Dr. Finley's conclusion that he is not released to go back to work.

At the request of Alaska Timber Exchange, Cortay saw Dr. Edward A. Grossenbacher, an orthopedic surgeon, for an independent examination. In his report of July 8, 1987, Dr. Grossenbacher made several diagnoses including a lumbar strain in Cortay's back aggravated by degenerative changes of the lumbar spine. Dr. Grossenbacher concluded: "The patient's inability

to work at this time would be based on the patient's injury 13 March 1987."

On August 13, 1987, the Board held a hearing in this case. *Cortay v. Silver Bay Logging and Alaska Timber Ins. Exch.*, No. 704308 (AWCB filed March 24, 1987). In its Decision and Order, the Board denied TTD benefits to Cortay on the basis of its finding that "[e]mployee was able to work after his injury and that he discontinued work to care for his wife." The Board also awarded attorney's fees to Cortay for services rendered on the issue of medical compensation on which he prevailed at the statutory minimum rate under AS 23.30.145(a).

Cortay appealed the Board's order denying him TTD benefits and the order awarding him only statutory minimum attorney's fees to the superior court. The superior court, Judge Duane Craske, affirmed the Board's denial of TTD benefits, but reversed the Board's order with respect to attorney's fees and remanded the case to the Board directing it to award Cortay $1,215.50 in attorney's fees for services performed prior to the Board hearing (computed at $55 per hour).

Cortay appeals.

## II.

In reviewing findings of fact by the Board, we apply the substantial evidence standard.

> [T]he court's task when reviewing a Board determination is not to reweigh the evidence presented to the Board, but to determine whether there is substantial evidence in light of the whole record that a reasonable mind might accept as adequate to support the Board's conclusion.... The Board's factual findings, however, may be set aside if the reviewing court cannot conscientiously find that the evidence supporting the decision is substantial when viewed in light of the entire record, including the evidence opposed to the Board's decision.

*Fairbanks North Star Borough v. Rogers & Babler*, 747 P.2d 528, 533–34 (Alaska 1987) (citations omitted).

Cortay's claim for TTD benefits is governed under AS 23.30.185. This statute provides that "[i]n case of disability total in character but temporary in quality, 80 percent of the injured employee's spendable weekly wages shall be paid to the employee during the continuance of the disability." The term "disability" is specifically defined in the Workers' Compensation Act ("Act") and therefore shall be construed in light of its statutory definition. *Estate of Ensley v. Anglo Alaska Constr. Inc.*, 773 P.2d 955, 957 (Alaska 1989). The Act defines "disability" as "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." AS 23.-30.265(10). We have interpreted this statutory definition as meaning that disability depends on earning capacity: "The concept of disability compensation rests on the premise that the primary consideration is not medical impairment as such, but rather loss of earning capacity related to that impairment." *Estate of Ensley*, 773 P.2d at 957 (quoting *Vetter v. Alaska Workmen's Compensation Bd.*, 524 P.2d 264, 266 (Alaska 1974)).

Based on this definition, we hold that the Board's finding that Cortay was able to work in spite of his March 13, 1987 injury is not supported by substantial evidence. The Board provides three grounds for its factual conclusion that Cortay was able to work despite his injury. First, the Board states that it relied on "the fact that [Cortay] worked for more than five and one half weeks after his fall." That Cortay was able to work through his pain from March 13 until April 24 is not substantial evidence for the conclusion that he was unable to work after May 6 when Dr. Finley diagnosed Cortay's injuries as rendering him unable to work and authorized time loss.[1] Cortay was not made aware of the severity of his back injuries until he saw Dr. Finley.

Second, the Board states that in finding Cortay able to work it relied on "the fact that he discontinued work only when his wife was released from the hospital." This

---

1. Cortay only seeks TTD benefits from May 6, 1987.

fact also has no bearing on Cortay's ability to work. The definition of "disability" in AS 23.30.265(10) says nothing about an employee's motivation for leaving work. The issue is whether Cortay was able to work despite his injury, not why Cortay decided to take leave.

The only relevant evidence on the issue of Cortay's ability to work that the Board relied on was the medical testimony of Dr. Grossenbacher and Dr. Finley. On the basis of this evidence, the Board concluded that Cortay was able to work.

> Our review of the medical evidence indicates that *there is no objective evidence that Employee was unable to work.* The physician's opinions about Employee's inability to work are based upon Employee's subjective complaints. Initially, Employee complained of a heel injury, but it did not prevent him from working. Dr. Grossenbacher testified that the heel injury did not prevent Employee from working. We have no doubt that Employee suffers from back pain as a result of his degenerative disc disease, arthritis, congenital defect and a strain when he fell. *The back pain did not render Employee unable to work, however, and Employee is not entitled to TTD compensation.*

(Emphasis added).

The Board's conclusion that Cortay's back pain did not render him unable to work is not supported by substantial evidence in the record. The only medical evidence in this case was that presented by Dr. Grossenbacher and Dr. Finley. Both doctors concluded that Cortay's March 13, 1987 injury aggravated an underlying degenerative back condition. Dr. Finley authorized time loss from May 6, 1987. Dr. Grossenbacher stated in his report that "[a]t this time, the patient is not medically stationary or orthopedically stable." Referring to Cortay's statement that under Dr. Finley's care he could return to work in three to four months, Dr. Grossenbacher stated: "I am unaware of any expediencies to improve his return to work on an earlier basis unless there is modified employment available to him."

The Board ignores the two doctors' consistent conclusions that Cortay was unable to work and states simply that their opinions are insubstantial because they "are based upon Employee's subjective complaints." Even if lack of objective evidence was a sound basis for finding that Cortay was unable to work, the Board is wrong in saying that there is no objective medical evidence. At his deposition, Dr. Finley was asked "[w]hat objective evidences of problem did you find with Mr. Cortay?" Dr. Finley responded as follows:

> A. Well, when he came in he could hardly walk, come limping in. Objective finding, you mean physical findings during the course of the examination; is that what you mean?
>
> Q. Yes.
>
> A. Well, pushing on his heel elicited a marked pain response and he had limitation in his motion in his back with pain responses evident from trying to execute maneuvers, and then the digital compression of the spinous processes or the spinal structures and the adjacent tissue would elicit pain responses from the patient.

In affirming the Board's conclusion that Cortay was not eligible for TTD benefits, the superior court ignored the Board's reasoning altogether. Instead, the court found substantial evidence for the Board's finding that Cortay was able to work in an inconsistency between Dr. Finley and Dr. Grossenbacher's medical opinions:

> The medical evidence in this case is not consistent and uncontradicted. The depositions of the two medical experts, when compared to each other, are found to contain inconsistencies and differing conclusions. Dr. Finley would not release Cortay for work as of May 6, 1987. Yet, Dr. Gross[en]bacher concluded that Cortay could work, provided his duties were modified somewhat.

(Citations omitted). The court cites the following portion of Dr. Grossenbacher's deposition testimony:

> Q. If Mr. Cortay's job as a cook could be designed such that he could sit down periodically, he would not have to lift

more than 25 pounds occasionally, and if I reported that he could—told you he could do that comfortably, would you release him to that job at this time?

A. Yes.

Q. Would the most important criteria in that be whether he said he could do it comfortably?

A. And safely, I think they're both important.

This difference in the doctors' testimony is not substantial evidence for the conclusion that Cortay was able to work. There is no evidence in the record that modified employment consistent with the above hypothetical was offered. Although Cortay had some help lifting items and cooking two afternoons a week, such help is clearly an insufficient job modification to allow Cortay to return to work given the long hours and the demanding tasks he is required to perform.

■ Neither the Board's nor the court's conclusion that Cortay was able to work is supported by substantial evidence. The two doctors whose reports are in the record agree that Cortay was unable to work on account of his back injuries. These independent medical opinions overwhelm any inference that Cortay was able to work either from circumstantial evidence relating to his behavior, or from the fact that one of the doctors would have concluded otherwise had modified employment been available when there was no evidence that it was.

### III.

■ That Cortay was unable to work is not dispositive of the issue whether the Board erred in denying him TTD benefits. As an alternative theory, Silver Bay proposes that this court may uphold the Board's decision even assuming that Cortay was unable to work because of his injury if it finds that Cortay quit work for reasons unrelated to his injury. Silver Bay cites *Vetter v. Alaska Workmen's Compensation Board*, 524 P.2d 264 (Alaska

1974) where this court stated "[i]f a claimant, through voluntary conduct unconnected with his injury, takes himself out of the labor market, there is no compensable disability." 524 P.2d at 266. In *Vetter*, the Board denied TTD benefits on the ground that Grace Vetter did not want work on account of her husband's negative attitude toward her employment. *Id.* The court concluded that if this determination was supported by substantial evidence, Vetter's claim for compensation was correctly denied. 524 P.2d at 267. Finding no substantial evidence for the conclusion, the court reversed the Board's decision. 524 P.2d at 268. Silver Bay argues that Cortay quit work to care for his wife. Since this reason is unrelated to Cortay's own injury, Silver Bay concludes that under *Vetter*, he is not entitled to disability benefits.

We conclude that *Vetter* does not control this case. There is no evidence that Cortay intended to remove himself from the labor market. Cortay took a temporary leave at the acquiescence of his employer to assist his wife's recovery.[2] Cortay expected to return to work for Silver Bay. The issue in this case is whether Cortay should forfeit TTD benefits to which he otherwise would be entitled because he spent the time during which he was unable to work at home caring for his wife.

We recently addressed the question whether TTD benefits should be denied to a disabled employee for the time during which he is also unavailable for work for reasons unrelated to work in *Estate of Ensley v. Anglo Alaska Construction Inc.*, 773 P.2d 955 (Alaska 1989). In *Estate of Ensley*, Ensley suffered a back injury while working on the North Slope. After he left the state to receive treatment, Ensley's doctor concluded that Ensley was unemployable due to his back condition. The doctor also stated that Ensley was unemployable because of an unrelated cancer condition predicted to end his life within three to six months. Ensley then flew to the Bahamas where he underwent cancer

---

2. The Board found only that Cortay "discontinued work to care for his wife." The Board did not find that Cortay terminated work when he

left on April 24, 1987. The evidence that Cortay did not intend to terminate his employment as of that date is uncontroverted.

treatment from February 10, 1985 through April 18, 1985. 773 P.2d at 956. The Board awarded Ensley TTD benefits only through February 9, 1985 on the ground that his disability was due to his cancer, not his back injury. 773 P.2d at 957.

We reversed the Board's decision, concluding that "Ensley is entitled to TTD payments for the period in which his back condition would have prevented him from working regardless of the fact he was also undergoing cancer treatment." *Estate of Ensley*, 773 P.2d at 959–60. We reasoned that "the remedial policy of the Act is furthered by providing compensation for temporary disabilities even when a concurrent unrelated medical condition has also rendered the worker unable to earn his or her normal wages." 773 P.2d at 959.

■ Today we ·clarify our holding in *Estate of Ensley* that TTD benefits cannot be denied to a disabled employee because he or she also may be unavailable for work for other reasons. Though *Estate of Ensley* concerns unavailability for medical reasons, the rationale for not denying TTD benefits applies to any reason that might render the employee unavailable for work. In a concurrence in a similar case, Justice Boochever explained:

> I believe that where a worker is disabled from employment because of work connected disability, he should be entitled to utilize the period during which he is necessarily disabled from work to further his education, to take care of any medical treatment *or to engage in any similar activity* without forfeiting his compensation benefits.

*Jones v. Alaska Workmen's Compensation Bd.*, 600 P.2d 738, 741 (Alaska 1979) (Boochever, J., concurring). When a worker is disabled from employment because of a work related injury, he remains disabled whether he is undergoing cancer treatment as in *Estate of Ensley* or assisting in his wife's recovery as in this case.

We therefore hold that Cortay is entitled to TTD benefits for his disabling injury of March 13, 1987 from May 6, 1987, when time-loss was authorized, until Cortay was able to work.[3]

## IV.

■ Cortay also appeals the superior court's award of $1,215.50 in attorney's fees for services rendered on the issue of medical benefits on which Cortay prevailed on the ground that it is inadequate as a matter of law. Attorney's fees in workers compensation cases are governed by AS 23.30.145. This statute establishes minimum attorney's fees based on the amount of compensation awarded. AS 23.30.145(a). In this case, the Board awarded the statutory minimum. The superior court reversed the Board's decision on attorney's fees on the ground that it was "inadequate as a matter of law."

We have interpreted AS 23.30.145 in light of its purpose to ensure that injured workers have competent counsel. In *Wise Mechanical Contractors v. Bignell*, 718 P.2d 971, 973 (Alaska 1986), we reiterated that "[i]n workers' compensation cases the objective is to make attorney fee awards both *fully* compensatory and reasonable so that competent counsel will be available to furnish legal services to injured workers." (citation omitted; ·emphasis added). We contrasted the purpose of attorney's fees in workers' compensation cases to that in civil cases under Civil Rule 82 "to afford reasonable *partial* compensation for attorney's fees to the winning civil litigant." *Wise*, 718 P.2d at 973 (emphasis added). In *Wise*, we held that a "full fee" is not necessarily limited to an hourly fee if a fee calculated at an hourly rate would not reflect the amount of work expended. *Id.* We then upheld a $24,520 award under AS 23.30.145(c) for the claimant's attorney's time on the appeal even though it was twice that which the attorney would have

---

**3.** Since Cortay did not terminate his employment, we need not address the "[d]ifferent considerations [that] may be applicable where ... an employee terminates employment for non-

work related reasons before the onset of any disability." *Jones*, 600 P.2d at 741 n. 1 (Boochever, J., concurring).

received if the fee had been calculated on an hourly basis. 718 P.2d at 975.

Applying this analysis to the present case, the superior court erred in not awarding attorney's fees with respect to Cortay's attorney's work on the prevailing medical issues at his actual rate of $110 per hour. Awarding fees at half a lawyer's actual rate is inconsistent with the purpose of awarding full attorney's fees in the workers' compensation scheme. If lawyers could only expect 50% compensation on issues on which they prevail, they will be less likely to take injured workers' claims in the first place. In addition, since we hold that Cortay is entitled to TTD benefits, he is also entitled to full reasonable attorney's fees for services performed with respect to this issue.

Attorney's fees for Cortay's appeal to the superior court and to this court are governed under AS 23.30.145(c): "If proceedings are had for review of a compensation or medical and related benefits order before a court, the court may allow or increase an attorney's fees." As a successful worker's compensation claimant on appeal, Cortay is entitled to full reasonable attorney's fees and costs for services rendered on appeal to this court and the superior court. *Fairbanks North Star Borough School District v. Crider*, 736 P.2d 770, 775 (Alaska 1987).

The superior court's judgment affirming the Board's decision denying Cortay TTD benefits and reversing the Board's decision regarding attorney's fees is REVERSED. We REMAND the case to the superior court with directions to reverse the Board's decision and to award Cortay full reasonable attorney's fees for work performed on appeal to the superior court. The superior court should then remand the case to the Board for a determination of the proper amount of compensation calculated from May 6, 1987, the date that time loss was authorized, to the date when Cortay's back condition no longer rendered him unable to work. The superior court also shall direct the Board to award Cortay full reasonable attorney's fees for services rendered with respect to his claim for TTD benefits in an amount not less than the statutory minimum under AS 23.30.145(a).