STATE of Alaska, PUBLIC EMPLOY-
EES RETIREMENT BOARD,
Appellant,

v.

**Louis CACIOPPO, Appellee.**

No. S–3687.

Supreme Court of Alaska.

June 21, 1991.

---

Virginia B. Ragle, Asst. Atty. Gen., and Douglas B. Baily, Atty. Gen., Juneau, for appellant.

Michael W. Holman, Ketchikan, for appellee and amicus curiae Ketchikan Volunteer Fire Dept.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

OPINION

MOORE, Justice.

Louis Cacioppo was permanently disabled as a result of three separate injuries. Two of those injuries were suffered during the course of his employment for the City of Ketchikan Fire Department, and the other was a nonoccupational injury. Cacioppo's application for occupational disability benefits was denied by the Public Employees' Retirement Board (PERB) based on its determination that the nonoccupational injury caused his disability. The superior court reversed. The PERB appeals the superior court's finding that there was not substantial evidence to support the PERB's determination. It also appeals the trial court's award of actual attorney's fees to Cacioppo. We affirm the decision of the superior court except as to its award of actual attorney fees.

I. Factual and Procedural History

Louis Cacioppo was employed as a fire protection specialist for the City of Ketchikan Fire Department (KFD) from June 7, 1981 through July 5, 1987. His position required him to be in good physical condition. All firefighters were tested annually to ascertain that they were capable of performing the rigorous work required of them. Cacioppo achieved a high level of physical fitness by maintaining a strenuous conditioning program.

In 1966, 15 years prior to his KFD employment, Cacioppo injured his left knee in a football accident. He underwent surgery described as a medial meniscectomy as a result of the 1966 injury. Cacioppo testified that the knee was trouble-free from then until 1983 when a fire truck suddenly accelerated, causing him to fall and twist his knee laterally. Arthroscopic surgery was performed on the knee on August 17, 1983. During the arthroscopic examination Cacioppo's physician, Dr. J.A. Shields, noted some degenerative changes in the knee, but found the anterior cruciate ligament

intact, although "a bit" frayed, and the knee tight.

Following the surgery, Cacioppo regained the full range of motion in his leg and had virtually no remaining pain. Dr. Shields approved his return to work. Approximately one month after the surgery, Cacioppo resumed his training regimen.

No additional problems with the knee occurred until Cacioppo's second work-related accident on March 13, 1987. While installing wall paneling at the station, Cacioppo fell from a ladder, twisting his left knee.[1] The knee caused him slight pain at first, but when it seemed to deteriorate rather than improve, Cacioppo sought treatment from Dr. Rick Wood. Dr. Wood took x-rays which "showed some very mild degenerative changes of the medial aspect of the left knee which had not progressed appreciably from x-rays taken 4 years ago." Cacioppo visited Dr. Wood several times, complaining of pain in his knee and that the knee gave out occasionally. Initially, no laxity in the ligaments was observed, but in April 1987, Dr. Wood noted "definite laxity in the anterior cruciate ligament" and "some medial osteophyte formation." He scheduled diagnostic arthroscopic surgery which was performed on June 11, 1987. During the surgery, Dr. Wood observed that the cruciate ligament was ruptured; he also noted osteoarthritis.

In October 1987, Dr. Wood estimated that Cacioppo had "a 40% loss of the left lower extremity secondary to the condition of his knee." He attributed approximately 75% of the loss to the 1983 and 1987 injuries. These percentages were based upon the 1984 American Medical Association Guidelines.

Following surgery, Cacioppo's knee continued to trouble him. On November 6, 1987, he returned to Dr. Wood complaining of instability in the knee and was fitted for a brace. Wood attributed the instability to the ruptured cruciate ligament. Pain was also a problem. Dr. Wood warned that

---

1. Although PERB claims that evidence is equivocal concerning the significance of the 1987 injury, we find no basis in the record to support this contention. Cacioppo filed an injury report shortly after the accident occurred, and provid-

ed affidavits of co-workers who witnessed the accident. Moreover, the determinations of the PERB state as a finding of fact that Cacioppo had suffered a third injury to his knee in March 1987.

"any excess pounding will definitely accelerate the degeneration of the knee and [that he] would recommend a lighter type of work if at all possible." There was no "light duty" classification at the KFD so, on July 5, 1987, Cacioppo resigned.

On July 2, 1987, Cacioppo applied for occupational disability benefits to the Alaska Division of Retirement Benefits (DRB). His application was reviewed by Dr. Willard E. Andrews, the DRB's consulting physician, who concluded that the work-related injuries were superimposed on an "already severely compromised left knee" and that Cacioppo was entitled to nonoccupational, rather than occupational, disability benefits. In its October 11, 1988 Opinion 88–15, the DRB, relying in part on Dr. Andrews' recommendation, determined that "the cumulative weight of the evidence does not demonstrate a concurrent relationship between relatively minor incidents involving injuries to the knee and the substantial degenerative arthritic condition which has developed over time...." Based on this finding, it recommended to the PERB that nonoccupational disability benefits be awarded instead of occupational disability benefits.

Cacioppo appealed the DRB's denial of occupational disability benefits to the PERB which concluded that the arthritis resulting from the 1966 off-duty injury was the proximate cause of Cacioppo's disability because, the 1983 and 1987 occupational injuries "do not, on balance, appear to be of a type likely to render a person such as Mr. Cacioppo unfit except for the pre-existing condition of degenerative arthritic change caused by the 1966 off-duty injury." On the basis of this finding, it issued Decision 88–20 on November 17, 1988, affirming the DRB.

Cacioppo then appealed the PERB's decision to the superior court which found no substantial evidence to support PERB's decision that degenerative arthritis from the 1966 injury caused Cacioppo's disability. Accordingly, it reversed PERB's denial of Cacioppo's disability benefits. The superior court also awarded actual attorney's fees to Cacioppo pursuant to Alaska Appellate Rule 508. PERB appeals.

## II. Cause of Cacioppo's Disability

The parties dispute the proper interpretation of the term 'proximate cause' in AS 39.35.680(26),[2] and whether there was substantial evidence to support the PERB's determination that the 1966 injury alone was the cause of Cacioppo's disability. At the heart of their debate is the question whether the rule of causation employed in workers' compensation cases is applicable to claims for occupational disability benefits under the Public Employees' Retirement System (PERS).

The Alaska Workers' Compensation Act (AWCA) contains a statutory presumption in favor of compensability. AS 23.30.120(1). This presumption may be overcome only by substantial evidence that the injury is not compensable. *Miller v. ITT Arctic Services*, 577 P.2d 1044, 1046 (Alaska 1978). Thus, in considering claims for workers' compensation benefits, we apply a presumption in favor of coverage known as the "last injurious exposure" rule. Under this rule, the employer at the time of the worker's most recent injury which is causally connected to the disability has full liability for payment of compensation benefits. *Ketchikan Gateway Borough v. Saling*, 604 P.2d 590, 595 (Alaska 1979).

Occupational disability benefits provided by PERS serve a distinct function and are not intended to replicate the protection given by the workers' compensation system.[3] Thus, under the PERS the em-

**2.** AS 39.35.680(26) states:

'occupational disability' means a physical or mental condition that, in the judgment of the administrator, presumably permanently prevents an employee from satisfactorily performing the employee's usual duties for an employer ... however, the proximate cause of the condition must be a bodily injury sustained, or a hazard undergone, while in the performance and within the scope of the employee's duties and not the proximate result of the wilful negligence of the employee[.]

**3.** PERS is simply intended to promote continued public employment whereas workers' com-

ployee bears the burden of establishing by a preponderance of the evidence that the disability was proximately caused by an injury which occurred in the course of employment. AS 39.35.680(26).

■ We will not expand the presumptions unique to workers' compensation by employing them in PERS occupational disability benefits claims. Nonetheless, workers' compensation and occupational disability benefits claims draw on common principles and raise similar issues. For these reasons, it is instructive to examine analogous workers' compensation cases when evaluating an occupational disability claim.

The definition of legal cause applied in workers' compensation cases is whether employment is "a substantial factor in bringing about the harm or disability at issue." *Estate of Ensley v. Anglo Alaska Const.*, 773 P.2d 955, 958 (Alaska 1989) (citing *Burgess Constr. Co. v. Smallwood (II)*, 623 P.2d 312, 317 (Alaska 1981)). In *Ensley*, we applied this definition in a case involving an employee who was diagnosed as having cancer shortly after being disabled in a work-related accident. We concluded that the impact of the cancer on Ensley was immaterial to the Alaska Workers' Compensation Board's (board) analysis of whether the injury which occurred in the course of employment caused a disability. Accordingly, we held that the board was required to consider whether the occupa-

tional injury was a substantial factor in bringing about a disability. *Id.* at 958.

■ The same rule is applicable to occupational disability claims under PERS. If one or more possible causes of a disability are occupational, benefits will be awarded where the record establishes that the occupational injury is a substantial factor in the employee's disability regardless of whether a nonoccupational injury could independently have caused disability. Thus, the proper inquiry in this case is whether Cacioppo's occupational injuries were a substantial factor in bringing about his disability.[4] As the PERB appears to have properly framed the causation question,[5] we now examine whether its conclusion that the 1983 and 1987 injuries were not a substantial factor sufficient to cause Cacioppo's disability is supported by substantial evidence contained in the record as a whole.[6]

Our review of the record reveals that the overall damage to Cacioppo's left knee consists of significant degenerative arthritis and a ruptured anterior cruciate ligament. Although the physicians who treated Cacioppo were unable to conclusively determine which of his multiple knee injuries caused his disability, the record reflects little disagreement as to the contribution of each injury to the current condition of Cacioppo's knee. Dr. Wood plainly stated his opinion that the 1966 injury caused "the

pensation protects a worker's ability to earn a certain wage. AS 39.35.010(a); *Holmberg v. State Div. of Risk Mgt.*, 796 P.2d 823, 826–27 (Alaska 1990).

4. The superior court defined the term 'proximate cause' as the cause nearest in time to the development of the disability. The court's emphasis on the event nearest in time to the disability is misplaced. If this test were applied, once the employees met the minimal requirement of establishing that the injury occurred during the course of employment, the burden would be effectively shifted to the employer to establish that the more remote occurrence was in fact the cause of the employee's injury. Thus, a presumption similar to the last injurious exposure rule would be created for occupational disability claims.

5. There are portions of its decision which suggest that the PERB placed a burden on Cacioppo

to prove that arthritis stemming from the 1966 injury was not sufficient to cause his disability. Notably, it concluded as a matter of law that "there has not been a sufficient proximate-cause linkage between the 1987 injury and Cacioppo's present condition *given the pre-existing condition of degenerative arthritis* commencing with an off-duty injury in 1966." (Emphasis added.) However, PERB also considered whether the 1983 and 1987 injuries were sufficient to cause Cacioppo's disability.

6. The standard of review for agency findings of fact is the substantial evidence test. *Keiner v. City of Anchorage*, 378 P.2d 406, 411 (Alaska 1963). When applying the substantial evidence test, the court does not independently reweigh the evidence. Rather, the court determines whether there is substantial evidence, in light of the whole record, such that a reasonable mind might accept the board's decision. *Delaney v. Alaska Airlines*, 693 P.2d 859, 863 (Alaska 1985).

majority of the arthritis" in the knee and that "Mr. Cacioppo probably sustained damage to the anterior cruciate ligament in the knee in 1983 [which] resulted in increased instability ... [and which] contributed to reinjuring the knee in 1987 and further exacerbating the wear and tear arthritis [Cacioppo] has."[7]

Since there is little dispute that Cacioppo's occupational injuries caused instability in his left knee, the critical issue is whether the record contains substantial evidence that the instability was not so debilitating as to constitute an occupational disability.[8] The record provides the following profile of the instability and its causes.

The instability in Cacioppo's left knee causes the knee to give out unpredictably and requires him to wear a knee brace. Additionally, none of the physicians who have examined Cacioppo found that the 1966 condition was the sole or substantially sole cause of his disability.[9] On the contrary, Dr. Wood estimated Cacioppo had a 40% loss of his left knee function; Dr. Wood attributed 10% of the loss to the 1966 injury, and approximately 15% to each of the later injuries. Thus, 75% of Cacioppo's total disability was due to the occupational accidents. Dr. Shields also considered the 1983 occupational injury to have caused damage independent of the earlier injury. In response to PERB's inquiry whether Cacioppo "sustain[ed] an acute injury in 1983 or ... an exacerbation of an old foot-ball injury with degenerative changes," he characterized the 1983 accident as "an acute problem and an acute injury." Finally, Cacioppo's high level of physical activity from 1966 until the 1987 occupational injury, and his unquestioned ability to perform the demanding work required of a firefighter are also convincing evidence that, even if the arthritis had seriously damaged his knee, its symptoms remained latent.[10]

The evidence in the record that instability in Cacioppo's left knee was a substantial factor in his inability to perform a firefighter's rigorous tasks is virtually uncontroverted. Thus, we find that the PERB lacked substantial evidence to support its determination that Cacioppo's disability was due to arthritis caused by a nonoccupational injury. Accordingly, the superior court's holding that Cacioppo is entitled to occupational disability benefits is affirmed.

### III. Attorney's Fees

The superior court awarded actual attorney's fees pursuant to Alaska Appellate Rule 508(e).[11] Actual attorney's fees in this case were hourly fees of $4,856.50 [12] plus a contingency fee equal to one-third of all amounts awarded through the date on which the appeal is resolved. The contingency fee does not apply to future benefits. Cacioppo's attorney estimated this arrangement would result in total fees of $14,873 ($168 per hour).

---

7. PERB's analysis also emphasized the connection between the 1966 injury and degenerative arthritis.

8. An employee is disabled if he is prevented from performing his *usual* duties for an employer or the duties of another *comparable* position that the employer makes available...." (Emphasis added.) AS 39.35.680(26). Thus, Cacioppo's disability is established if the instability prevents him from performing the particular duties required of a firefighter.

9. Although Dr. Andrews, the PERB's consulting physician, concluded that degenerative arthritis stemming from the 1966 injury was the primary cause of Cacioppo's disability, Dr. Andrews did not physically examine Cacioppo. Rather, his diagnosis was based upon evaluations of Dr. Wood's and Dr. Shields' records for the purpose of assessing the cause of Cacioppo's disability, and the records do not support his conclusion.

10. Following the 1983 injury, he was able to perform his job, and resume his exercise regimen. In 1985 he represented the KFD in the Northwest Police and Firefighters Olympics where he won a gold medal in the running broad jump, a silver medal in the hop, step and jump, and a silver medal in handball.

11. Appellate Rule 508(e) provides in pertinent part:

Attorney's fees may be allowed in an amount to be determined by the court.... If the court determines that an appeal or cross-appeal is frivolous or that it has been brought simply for purposes of delay, actual attorney's fees may be awarded to the appellee or cross-appellee.

12. The hourly rate charged for the appeal was $55.00 and the record reflects 88.3 hours worked on the appeal.

PERB objects to the fee award on the ground that the combination of a contingency fee with an hourly rate is not a reasonable basis for computing attorney's fees and on the ground that the trial court abused its discretion by awarding actual attorney's fees.[13] In making the award, the trial court noted that the expenditure of attorney's fees for the appeal appeared well justified and that the actual attorney's fees charges by Cacioppo's attorney were reasonable.[14] *See Berry v. Ketchikan Public Utilities*, 727 P.2d 762, 764 (Alaska 1986) (the award of actual attorney's fees pursuant to Appellate Rule 508 is limited to reasonable fees).

We have recently held that under Appellate Rule 508(e) attorney's fee awards ordinarily "should only partially compensate the prevailing party for attorney's fees." *Kenai Peninsula Borough v. Cook Inlet Region, Inc.*, 807 P.2d 487 (Alaska 1991). Hence, in the absence of statutory authorization, or a finding that the appeal is frivolous or brought solely for purposes of delay, only partial attorney fees may be allowed. *Id.* at 501. Accordingly, we must reverse the trial court's award of actual attorney fees to Cacioppo. Nonetheless, the trial court on remand may still exercise its sound discretion and award a substantial sum as partial attorney's fees, if persuaded the amount of fees to be awarded is justified and reasonable. *See, e.g., Stevens By Park View Corp. v. Richardson*, 755 P.2d 389, 396 (Alaska 1988).

AFFIRMED in part, REVERSED in part, and REMANDED.

---

13. PERB also asserts that Cacioppo's counsel claimed excessive hours, but it does not suggest that he artificially inflated the hours. We find that the superior court did not abuse its discretion when it held that the number of hours reported was reasonable.

14. The actual hourly fee charged by Cacioppo's attorney was $55.00, substantially less than his normal hourly rate of $120.00. The contingency arrangement was limited to awards of past benefits and served merely to bring the total hourly rate up to a level approximately equal to his standard hourly rate. Although the combined hourly and contingent fee arrangement was unconventional, it was not unreasonable.