**Sandra THURSTON, Petitioner,**

v.

**GUYS WITH TOOLS, LTD., d/b/a The Bush Pilot, and Alaska National Insurance Company, Respondents.**

No. S–12939.

Supreme Court of Alaska.

Oct. 16, 2009.

40.  *Griswold v. City of Homer,* 186 P.3d 558, 563    (Alaska 2008).

WINFREE, Justice.

## I. INTRODUCTION

This case presents questions of law about a workers' compensation claim for permanent total disability (PTD) when the employee: (1) had a preexisting condition; (2) suffered a work injury implicating the preexisting condition; and (3) suffered a subsequent unrelated medical condition independently rendering the employee disabled.

An employee with preexisting arthritis in her left knee injured that knee at work in August 2002 and had knee surgery in June 2003. She was diagnosed with lung cancer in October 2003. She was determined medically stable with respect to the knee injury in April 2004. In February 2006 she filed a workers' compensation claim for PTD and other benefits. The Alaska Workers' Compensation Board decided that the work injury continued to be compensable and that the combination of the cancer and the knee condition made the employee permanently and totally disabled; it thus awarded her PTD benefits. The Alaska Workers' Compensation Appeals Commission vacated the Board's decision, holding that the Board was required to decide whether the knee injury alone could cause PTD.

Because the Commission's decision is ambiguous, we granted the employee's petition for review to ensure that the Board used the correct legal standards in its rehearing after remand.

## II. FACTS AND PROCEEDINGS

Sandra Thurston worked as a bartender for Guys With Tools, Ltd. at the Bush Pilot bar in Fairbanks beginning in 2000. She injured her left knee while working on August 17, 2002.[1] Thurston had knee surgery in June 2003 after a course of conservative treatment.[2] Guys With Tools paid her tem-

Robert M. Beconovich, Law Office of Robert M. Beconovich, LLC, Fairbanks, for Petitioner.

Nora G. Barlow, DeLisio Moran Geraghty & Zobel, P.C., Anchorage, for Respondents.

Before: FABE, Chief Justice, EASTAUGH, CARPENETI, and WINFREE, Justices.

1. In 1998 Thurston had arthroscopic surgery on her left knee because of a suspected torn medial meniscus. A meniscus is "[a] cartilage disk that cushions the ends of bones meeting in a joint." WEBSTER'S II NEW RIVERSIDE UNIVERSITY DICTIONARY 741 (1988). There are two menisci in the human knee, the lateral meniscus and the medial meniscus. 2 ROSCOE N. GRAY & LOUISE J. GORDY, ATTORNEYS' TEXTBOOK OF MEDICINE ¶ 7A.13 (3d ed.1999). The 1998 surgery revealed that both Thurston's menisci were intact, but that cartilage had been damaged in both the medial and the patella compartments (areas where bones meet). During the 1998 surgery the damaged cartilage was removed from Thurston's left knee.

2. The notes from Thurston's 2003 arthroscopic surgery indicate that Thurston had a tear in her lateral meniscus but that her medial meniscus was intact. Earlier diagnostic imaging studies

porary total disability (TTD) and medical benefits for the injury.

In October 2003 Thurston was diagnosed with lung cancer and underwent radiation treatment and chemotherapy. She did not have knee-related medical treatment again until April 2004, when she was examined, determined to be medically stable, and rated as having a one-percent whole person impairment. Guys With Tools then paid permanent partial impairment (PPI) benefits and ended TTD payments.

Thurston continued to have knee pain. In July 2005 Dr. J. Michael Carroll, who was treating her cancer, ordered an ultrasound of Thurston's leg to rule out deep vein thrombosis. The ultrasound showed popliteal [3] cysts in her left knee, which Dr. Carroll attributed to her work injury. Thurston first returned to the surgeon who had performed her 2003 knee surgery, but then changed to Dr. Richard Cobden as her treating physician. Dr. Cobden also attributed her continuing knee pain to her work injury.[4]

In February 2006 Thurston filed a workers' compensation claim for a variety of benefits, including TTD benefits after April 2004 and PTD benefits. Guys With Tools filed a notice of controversion and an answer denying liability for any further TTD benefits or PTD benefits, relying on a May 2006 independent medical evaluation (IME) by Dr. John Joosse. Dr. Joosse stated in his IME report that Thurston was unable to return to work, but that the majority of her disability was attributable to her cancer.

The Board held a hearing on Thurston's claim on October 12, 2006.[5] Thurston and her husband testified on her behalf; Dr. Joosse testified for Guys With Tools. Dr. Cobden's medical records were on file.

Thurston and her husband described her medical problems and treatments, as well as the limitations on her activities. They both testified that before the work injury she had been able to perform her job functions, including her waitress duties, without any knee-related problems. Thurston's husband also testified that Thurston had no limitations in household tasks and no arthritis-related complaints before the work injury. He testified that as of the hearing, Thurston was unable to perform many normal activities, such as walking, without assistance. Both Thurston and her husband testified that she would be a candidate for knee replacement surgery, but her cancer treatment precluded her from having surgery.

Dr. Joosse testified that in his opinion Thurston's work-related knee injury had resolved and she was medically stable with respect to the knee injury. Dr. Joosse described the earlier damage to the cartilage in Thurston's knee as the "beginning of genuine arthritis." He testified that a traumatic injury could aggravate preexisting arthritis, but that in his opinion Thurston's injury had not aggravated her preexisting arthritic condition. He agreed that she might be a candidate for knee replacement surgery, but attributed all of her then-current knee problems to her preexisting arthritis. He agreed that surgery is generally not performed while a patient is undergoing chemotherapy.

In its December 6, 2006, decision, the Board found that Thurston was eligible for PTD benefits related to her August 2002 work-related injury. The Board first used a three-step analysis to evaluate whether Thurston's condition remained compensable: it found that Thurston had attached the presumption of compensability, the employer

---

had suggested tears in both menisci. Part of Thurston's lateral meniscus was removed in the 2003 surgery.

**3.** Popliteal means "pertaining to the posterior surface of the knee." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1334 (28th ed.1994).

**4.** Thurston's medical records also noted a work-related back condition. Whether Thurston hurt her back or aggravated a preexisting back problem in the 2002 work-related incident was dis-

puted, although it appears that the employer did not dispute that the brace Thurston wore for several months after her knee injury caused some back strain.

**5.** At an August 9, 2006, prehearing conference, the benefit claims for the hearing were narrowed to PTD, PPI, medical and transportation costs, penalties, and interest. Both parties discussed TTD briefly at the hearing even though it was not listed in the prehearing conference summary.

had rebutted it, and Thurston had proven her claim by a preponderance of the evidence.[6] The Board concluded, based primarily on Dr. Cobden's medical reports, that Thurston's condition continued to be compensable and that Thurston's work for Guys With Tools "was a substantial factor in her resulting left knee disability." The Board did not explicitly say that Thurston's knee disability was a substantial factor in her total disability—instead, the Board said she was entitled to PTD benefits if she proved "her work injury [was] a substantial factor in her resulting disability" and that "the combination of the employee's work injury and her cancer render her entitled to PTD benefits." The Board then found that the combination of Thurston's knee disability and cancer rendered her totally disabled, and awarded her PTD benefits.

Guys With Tools appealed to the Alaska Workers' Compensation Appeals Commission on a number of grounds, including its contention that the Board applied an incorrect legal analysis to the PTD question. The Commission agreed with Guys With Tools, stating that it was error for the Board to combine the effects of the cancer and the knee injury in deciding whether Thurston was totally disabled: "[t]he [B]oard clearly did not consider whether the knee injury was still disabling regardless of [Thurston's] cancer." The Commission stated that "reasonable minds could differ whether the evidence in the record supports a finding of permanent total disability based on the work injury alone" and remanded the case to the Board for a rehearing on the record.

The Commission also concluded that one of Dr. Cobden's medical reports on which the

Board had relied was not substantial evidence because no reasonable person would rely on it. The Commission determined that the Board failed to clearly define Thurston's claim, specifically noting that the Board failed to answer whether Thurston's work-related injury aggravated a preexisting condition—her arthritis—so as to result in disability. The Commission also faulted the Board for failing to answer other material questions that the parties raised, such as whether Thurston's work-related injury had caused a disability related to her back condition.

Thurston requested review, which we granted to ensure that the Board applied the correct legal standard on remand.

## III. STANDARD OF REVIEW

■ In workers' compensation appeals from the Appeals Commission, we review the Commission's decision and apply our independent judgment when, as here, there is a question of law that does not involve agency expertise.[7]

## IV. DISCUSSION

The parties disagree about how to analyze a case like this one, where an employee who has suffered a work-related injury is subsequently diagnosed with an unrelated condition. Guys With Tools argues that the Board incorrectly applied *Tolbert v. Alascom, Inc.*[8] and *Providence Washington, Inc. v. Fish*[9] to Thurston's case. Guys With Tools asserts that both of these cases expressed a rule about preexisting conditions rather than subsequent illnesses, and that *Estate of Ensley v. Anglo Alaska Construction, Inc.*[10] controls

---

6. *See Smith v. Univ. of Alaska, Fairbanks*, 172 P.3d 782, 788 (Alaska 2007) (citing *Bradbury v. Chugach Elec. Ass'n*, 71 P.3d 901, 905–06 (Alaska 2003)) (summarizing three-part presumption test for workers' compensation claims).

7. *Barrington v. Alaska Commc'ns Sys. Group, Inc.*, 198 P.3d 1122, 1125 (Alaska 2008).

8. 973 P.2d 603, 611–12 (Alaska 1999) (rejecting "but-for" test and adopting "substantial factor" test for workers' compensation cases involving two independent causes resulting in a disability).

9. 581 P.2d 680, 680–81 (Alaska 1978) (affirming award of PTD benefits when work-related back

injury "combined" with preexisting psychological or emotional disorders or infirmities to render employee permanently and totally disabled).

10. 773 P.2d 955, 959–60 (Alaska 1989) (holding that when employee suffers compensable work injury, concurrent unrelated medical condition rendering employee unable to work will not excuse employer from paying compensation otherwise due for work injury, and remanding for determination whether employee's work injury would have prevented him from working regardless of his ongoing cancer treatment).

Thurston's case and precludes her claim. Relying on *Estate of Ensley* and *DeYonge v. NANA/Marriott*,[11] Thurston argues that the Board correctly used the substantial factor test when it found that she was permanently and totally disabled by a combination of her cancer and knee injury.

Thurston had a preexisting medical condition, suffered a work injury, and then suffered a subsequent independent condition. Whether a work injury is a substantial factor in a resulting disability is evaluated differently in the context of a preexisting condition than in the context of two independent conditions.

■ In the context of a preexisting condition—in this case Thurston's preexisting left knee arthritis—the employee must show that the work injury "aggravated, accelerated, or combined with the disease or infirmity to produce the death or disability for which compensation is sought."[12] To prove that a work injury combined with a preexisting condition to produce a disability, the employee must show that "(1) the disability would not have happened 'but-for' an injury sustained in the course and scope of employment; and (2) reasonable persons would regard the injury as a cause of the disability and attach responsibility to it."[13] The Board appears to have considered that framework for Thurston's preexisting arthritis and the effect of her work injury. Prior to discussing Thurston's cancer it found undisputed evidence that "[Thurston] injured her back and knee while working for the employer" and "after undergoing surgery ... symptoms have continued to persist." Relying on Dr. Cobden's opinion that the work injury combined with and accelerated her preexisting condition, the Board then concluded that her knee disability remained compensable. The Board found

that Thurston's work injury "was a substantial factor in her resulting left knee disability" before determining that "the combination of the employee's work-related knee injury and her cancer condition has rendered her permanently totally disabled."

■ In the different context of a subsequent independent condition—in this case Thurston's cancer—the employee must show that the work-related condition is a substantial factor in the overall disability. The Commission correctly stated that an employer does not "take on unrelated diseases that find the employee after a work-related injury." But the Commission's decision is potentially ambiguous because it appears to adopt Guys With Tools's position that the work injury must be analyzed "in isolation." Taken to a logical end, this could result in application of the "but-for" test that we rejected in *Tolbert*.[14] Thurston does not need to show that but for her work injury she would not be disabled. To be eligible for TTD or PTD benefits Thurston needs to show that her work-related disability is a substantial factor in her total disability, without regard to whether her cancer could independently have caused the total disability.[15] The test does not require the Board to pretend that Thurston does not have cancer.

■ A hypothetical loosely based on the facts of this case illustrates this point. An employee suffers an on-the-job knee injury, leaving her temporarily totally disabled. The employee is initially treated conservatively, but after a number of months all doctors involved in her care agree that surgery is necessary. Before the employee can undergo the needed surgery, she is diagnosed with cancer and immediately begins chemotherapy, foreclosing the possibility of

11. 1 P.3d 90, 96 (Alaska 2000) (stating that "worsened symptoms may be compensable" and that "for an employee to establish an aggravation claim ... the employment need only have been 'a substantial factor in bringing about the *disability.*'") (emphasis in original) (quoting *Hester v. State, Pub. Employees' Ret. Bd.*, 817 P.2d 472, 476 n. 7 (Alaska 1991)).

12. *Thornton v. Alaska Workmen's Comp. Bd.*, 411 P.2d 209, 210 (Alaska 1966).

13. *Doyon Universal Servs. v. Allen*, 999 P.2d 764, 770 (Alaska 2000) (citing *Fairbanks N. Star Borough v. Rogers & Babler*, 747 P.2d 528, 532 (Alaska 1987) and *State v. Abbott*, 498 P.2d 712, 726–27 (Alaska 1972)).

14. *Tolbert*, 973 P.2d at 611–12.

15. *Id.* at 612 (quoting *State, Pub. Employees' Ret. Bd. v. Cacioppo*, 813 P.2d 679, 683 (Alaska 1991)).

knee surgery for at least a year. The cancer itself does not change the character or extent of the work-related disability; the work-related disability remains temporarily but totally disabling. But the subsequent cancer diagnosis would impede necessary medical treatment of her work-related condition and could not reasonably be excluded from consideration of the duration of her disability. The employer is not liable for the subsequent condition itself, but it remains liable for the work-related injury and disability, even though the subsequent illness may prolong the duration of the employee's disability. As we stated in *Estate of Ensley*, to deny coverage to an employee in such circumstances would "create a windfall to employers simply because of the employee's misfortune in developing an independent medical condition."[16]

Relying on *Carter v. B & B Construction, Inc.*,[17] Thurston argues that she is entitled to PTD benefits as a matter of law. At oral argument before us, she pointed out that the employee in *Carter* had a number of medical conditions that arose after his work-related injury and contributed to his disability. But *Carter* is distinguishable. There the employee had a doctor's opinion that linked his work-related neck injury to his PTD regardless of his other subsequent conditions,[18] and his employer did not produce sufficient rebuttal evidence to meet its burden under the three-step presumption analysis, so the employee was entitled to PTD benefits as a matter of law.[19] Thurston does not point to a similar medical opinion in her case identifying her knee condition as permanently and totally disabling regardless of her cancer.

■ It remains for the Board to determine on remand whether Thurston is eligible for TTD or PTD benefits, or any benefit at all. Because the Board found that Thurston's work injury was a substantial factor in her left knee disability, we disagree with the Commission's conclusion that the Board did not consider whether the knee injury was still disabling regardless of Thurston's cancer. But the Board did not explicitly find that Thurston's left knee disability was a substantial factor in her total disability. On remand, then, to obtain TTD or PTD benefits Thurston must prove that her knee disability is totally disabling, either temporarily or permanently, regardless of her cancer.[20]

Finally, the Commission determined that one medical report by Dr. Cobden on which the Board relied for its finding that Thurston's knee condition remained compensable was not substantial evidence. Noting that Thurston's surgical records did not show removal of the medial meniscus, the Commission focused on Dr. Cobden's chart note stating that surgical removal of Thurston's medial meniscus resulted in degeneration of her medial joint compartment.[21] Thurston argues that the Commission overstepped its

16. *Estate of Ensley v. Anglo Alaska Constr. Inc.*, 773 P.2d 955, 959 (Alaska 1989) (noting that we had previously "allowed an employee to receive temporary disability benefits during a period in which he was also totally disabled as a result of treatment for a nonwork-related medical condition" (citing *Jones v. Alaska Workmen's Comp. Bd.*, 600 P.2d 738 (Alaska 1979))).

17. 199 P.3d 1150 (Alaska 2008).

18. *Id.* at 1154 (noting that doctor completed a form stating that employee was permanently and totally disabled and diagnosing only work-related neck condition).

19. *Carter*, 199 P.3d at 1155, 1157–58.

20. Thurston argues that the Board found her permanently and totally disabled because her cancer "severely restricted" her treatment options for her knee and "given typical remissions time[s]" the Board decided that her injuries were permanent. Thurston also asserts that the Board does not need "to document the patent and obvious in reaching its conclusions" that her knee condition prevents her from working and that she is permanently and totally disabled. But assuming that Thurston's knee disability remains compensable, the Board must make decisions regarding the relationship of the knee disability to the quality and duration of Thurston's overall disability—whether it is total or partial, temporary or permanent. The cause and extent of Thurston's overall disability, the ultimate questions in this case, are neither patent nor obvious. We express no opinion about the standards for TTD or PTD benefits or how to apply them to the facts of this case as those issues were not presented for review.

21. *Cf. supra* notes 1–2. This apparent error is not explained in the record, and the Commission's conclusion that it is not reliable evidence seems correct.

statutory mandate by holding that Dr. Cobden's opinion could not be credited and directing the Board to adopt Dr. Joosse's opinion.

We do not read the Commission's decision so broadly, and as Guys With Tools conceded at oral argument before us, the Board may rely on other medical records and opinions by Dr. Cobden on remand. Furthermore, the Commission's statement that "reasonable minds could differ whether the evidence in the record supports a finding of permanent total disability based on the work injury alone" suggests that in its view adequate evidence in the record supported Thurston's position, but that the Board, as fact finder, needed to evaluate the evidence first.

## V. CONCLUSION

For the reasons stated above, we REMAND to the Appeals Commission with instructions to remand to the Board for further proceedings consistent with this opinion. The Commission may grant the Board discretion to accept additional evidence on remand.

MATTHEWS, Justice, not participating.