Shirley L. SHEA, Appellant,

v.

STATE of Alaska, DEPARTMENT OF
ADMINISTRATION, DIVISION OF RE-
TIREMENT AND BENEFITS, Appellee.

No. S–13887.

Supreme Court of Alaska.

Dec. 23, 2011.

Steven J. Priddle, Law Offices of Steven J. Priddle, Anchorage, for Appellant.

Joan M. Wilkerson, Assistant Attorney General, and John J. Burns, Attorney General, Juneau, for Appellee.

Before: CARPENETI, Chief Justice, FABE, WINFREE, CHRISTEN, and STOWERS, Justices.

## OPINION

CHRISTEN, Justice.

## I. INTRODUCTION

Shirley Shea underwent a medical procedure in 1984 that resulted in intermittent soreness in her legs, back, and pelvic region. She began working for the State of Alaska in 1993, which required her to sit at a desk for prolonged periods of time. Shea's pain began to worsen around 1998, and in 2001 it forced her to leave her job. Shea filed for both nonoccupational and occupational disability benefits, claiming that the periods of prolonged sitting at work aggravated her condition. An administrative law judge found that Shea's medical records indicated that prolonged sitting at work was one of the factors contributing to her chronic pain. But the administrative law judge found that many of Shea's other everyday activities were also "pain triggers." The administrative law judge concluded that because Shea's prolonged sitting at work was "simply one among many contributing factors" to her chronic pain, it was not "of particular causal significance" to her condition. Shea appealed to the superior court, which upheld the administrative law judge's decision. Because Shea must prove only that her employment was a substantial factor—not *the* substantial factor—in causing her disability, we remand for the administrative law judge to reevaluate the evidence.

## II. FACTS AND PROCEEDINGS

It is undisputed that Shea is disabled and had to leave her job with the State of Alaska due to debilitating pain. The sole issue in this case is causation, i.e., whether substantial evidence supports the administrative law judge's (ALJ) conclusion that Shea's employment was not a substantial factor in causing her disability.

### A. Facts

#### 1. 1984 to 1993: Initial injury

In 1984, when Shirley Shea was 22 years old, she received an abnormal test result after undergoing a gynecological examination. A cone biopsy was performed as a follow-up procedure. The procedure resulted in damage to nerves in Shea's groin area. The day after the procedure, Shea experienced a great deal of stiffness in her back and lower extremities. The pain subsided, but over the next few years it returned intermittently.

#### 2. 1993 to 2001: State employment

Shea obtained a job with the State of Alaska in 1993 as an eligibility technician in the Department of Health and Social Services' Division of Public Assistance. This position required Shea to spend prolonged periods of time sitting at her desk. Around 1995 to 1996 Shea began experiencing increased achiness in her right leg, hip, and foot, but the pain was not constant and it was no more frequent than before her state employment.

During 1997 and 1998 Shea's pain increased in severity and consistency. She began propping up her feet and using a pillow on her chair at work. Shea's primary care physician, Dr. Alexander Baskous, referred Shea to Dr. Shirley Fraser for a neurological evaluation. Shea told Dr. Fraser that her pain had increased and that "if she takes part in physical activity, the leg gets worse and often will get worse in mid-period and sometimes during her menstrual cycle."

Shea was examined by Dr. Declan Nolan, an orthopedist, in November 1998. Shea told Dr. Nolan that "[s]he [was] still reasonably

functional but the pain bothers her a lot and limits her activities moderately." Dr. Nolan noted that "[t]he pain seems to have no significant aggravating or alleviating factors."

Shea traveled to the Scripps Clinic in California in July 1999 to see Drs. Peter Sacks and Gary Williams. Dr. Sacks noted that Shea's symptoms "ha[ve] become progressively worse over the years." Dr. Williams diagnosed Shea with "trochanteric bursitis." [1]

Dr. Baskous referred Shea to Dr. Leon Chandler, a pain specialist at A.A. Pain Clinic in Anchorage, in September 1999. The record does not show that Shea specifically mentioned her work environment as an aggravating factor, but she checked boxes on a pre-examination questionnaire to indicate that the following increased her pain: cold, damp, weather changes, massage, pressure, movement, sleep/rest, sitting, standing, bowel movements, tension, and fatigue. She also checked boxes indicating that heat, sleep, lying down, and distractions decreased her pain.

In January 2000 Shea went to work as an "Eligibility Technician II" in the Fraud Control Unit of the Division of Public Assistance. This position also required Shea to sit at her desk for prolonged periods.

October 2000 records from Dr. Chandler's office show that an aggravating factor for Shea's pain was "sitting" and that relieving factors included pillows, heat, and walking. In December 2000 Shea saw Dr. Jon Slocumb, a pelvic pain specialist at the University of Colorado. Dr. Slocumb diagnosed Shea with ilioinguinal neuralgia and recommended nerve block treatments.

Shea notified the State of her need to take medical leave to explore treatment options in July 2001. A few weeks later, Dr. Dale Trombley completed a physician's statement for the Division of Retirement and Benefits on Shea's behalf. He explained that "prolonged sitting or standing causes [Shea's] pain to increase." Shea filed an application for Public Employees' Retirement System (PERS) disability benefits on August 22, indicating on the form that she was only applying for "Nonoccupational Disability Benefits." [2] Under "Cause of disability," Shea wrote: "The nerve damage is believed to be from surgery 11–15–84 and Trochanteric bursitis from nerve damage of the Ilioinguinal Neuralgia."

Shea met with Dr. Joella Beard in October 2001 to get a disability evaluation for an impairment rating. Dr. Beard, a specialist in physical medicine and rehabilitation, noted that the "things that make [Shea's] pain worse are sitting, standing, walking, exercise, bending forward or backwards, cold and stairs. Things that reduce the pain are lying down, pain pills, heat. She does feel the pain is getting worse as she gets older."

Shea exhausted her Family and Medical Leave Act benefits in October 2001 and her Alaska Family Leave Act benefits in November 2001, but she was still unable to return to work due to pain. Shea was notified that she was being "separated" from her job with the State in December 2001 because of her "inability to return to work."

### 3. 2002 to 2005: Application for disability benefits

On January 31, 2002, the Director of the Division of Retirement and Benefits sent Shea a letter deferring her application for nonoccupational disability benefits because the Division's retained expert, Dr. William Cole, opined that there were still medical options available to her. Shea obtained let-

---

1. "Trochanteric bursitis" refers to "chronic, intermittent pain accompanied by tenderness" in the hip. Brian Williams and Steven Cohen, *Greater Trochanteric Pain Syndrome: A Review of Anatomy, Diagnosis, and Treatment,* 108 ANESTHESIA & ANALGESIA 1662 (May 2009), *available at* http://www.anesthesia-analgesia.org/content/108/5/1662.full.

2. Eligibility for occupational disability benefits requires a state employee to (1) suffer a *work-*

*related* injury or illness; (2) be permanently disabled as a result; and (3) terminate employment because of the disability. AS 39.35.680(27) (defining "occupational disability"); AS 39.35.410. Nonoccupational disability benefits require the same showing, except the injury or illness does not need arise from employment. AS 39.35.400; AS 39.35.680(24) (defining "nonoccupational disability").

ters from her own physicians explaining why Dr. Cole's proposed treatment options were inappropriate for her.

On May 2, 2002, Shea was seen by a new physician, Dr. John Ravits, for a neurological consultation. Dr. Ravits recorded Shea's pain triggers much as her other care providers described them.[3] He concluded that her neurological examination results were normal and that Shea should focus her attention on chronic pain management and rehabilitation.

Shea's counsel sent a letter to the Division of Retirement and Benefits in November 2002 requesting that it amend her application to include occupational disability benefits in addition to nonoccupational disability benefits. The letter explained: "[O]ur research indicates that [Shea's] pre-existing condition was likely aggravated by her working conditions and environment."

The Director of the Division of Retirement and Benefits granted Shea's claim for nonoccupational disability benefits on March 21, 2003, but the Director denied her claim for occupational disability benefits. This decision was based on Dr. Cole's recommendation, which summarized Shea's doctors' reports and concluded that "[t]here is not evidence from the record that the pain was caused by her occupation."[4]

On August 22, 2003 Shea sought a medical opinion from Dr. Michael Gevaert on whether her pain was caused by her work for the State of Alaska. Dr. Gevaert's records show that Shea reported that her pain "is worse with standing and prolonged sitting. Sitting with a good posture, stress, physical activity, bathing, [lifting], squatting, cold environment, menstrual cycles, and sitting without her legs elevated aggravates her pain." Asked whether Shea's state employment substantially aggravated her condition, Dr. Gevaert responded:

It is my understanding that chronic pelvic pain is aggravated by sitting. Her present condition is a chronic irritation of the nerve. Sitting at work or at the home may increase the pain and . . . substantially aggravate the pathophysiologic condition.

It is therefore my opinion after careful review of the medical records, obtaining a history from the patient and a clinic examination that her present condition is not work-related. Her work did not substantially aggravate her condition.

Shea challenged a number of the statements in Gevaert's report as factually inaccurate.

Shea sought another medical opinion on causation from Dr. Michael Smith on February 11, 2004. In describing the history of Shea's condition, Dr. Smith wrote that Shea "had pain almost all the time. She began having trouble with her menses. She missed two days of work every time she menstruated as the pain was intolerable. She also described worsening of her pain due to sitting while working." Dr. Smith concluded that Shea should "avoid repetitive or prolonged bending and twisting. Squatting, stair climbing, and especially sitting for extended periods increase the symptoms and should be restricted."

Shea next sought an opinion on causation from Dr. Paul Blocher, who was qualified as an expert in general medicine. Dr. Blocher evaluated whether Shea's work substantially aggravated her condition, but he did not independently examine her because he was not licensed to do so in Alaska. Instead, Dr. Blocher's conclusions were based exclusively on his conversations with Shea and his review of Shea's medical records. Dr. Blocher's opinion was that Shea's "employment with the State from 1993 through 2001 exacerbated her pre-existing condition" and that Shea's state employment was "the only plausible medical etiology of [her] disease."

In August 2005, at the Division of Retirement and Benefits' request, Dr. William Cole reviewed all the information in Shea's medical record, including the opinions and medical

---

3. Dr. Ravits reported that "[Shea's pain] gets worse with standing, sitting, stress, and during menses. It improves with medications, lying down, taking a hot bath, and getting on her side in the fetal position. . . . She thinks it is worsening in intensity of symptoms."

4. Shea also applied for Social Security disability benefits and was initially denied. Her nonoccupational disability benefits were terminated as a result. Shea subsequently won her Social Security disability benefits appeal and her nonoccupational disability benefits were reinstated.

reports Shea had obtained since Dr. Cole's opinion in March 2003. After considering this information, Dr. Cole maintained his opinion that "there is not a substantial presentation of an argument to support [Shea's] claim that her job activities were [a] significant contributing factor to this condition, no more than the rest of the activities of daily living of her life were." As a result, the Division affirmed its denial of Shea's claim for occupational disability benefits.

Shea appealed to the Office of Administrative Hearings.

## B. Proceedings

### 1. The administrative proceedings

The ALJ assigned to Shea's case, Andrew Hemenway, conducted a hearing on Shea's claim in March 2006. The sole issue was causation, i.e., whether Shea's employment was a substantial factor in causing her disabling pain. Shea called three lay witnesses to testify on her behalf: her husband, her former boss, and herself. She also called two expert witnesses: Drs. Smith and Blocher. The State called one expert: Dr. Beard.

The ALJ issued his decision on May 21, 2007, affirming the denial of Shea's application for occupational disability benefits. The ALJ evaluated the credibility and persuasiveness of the four doctors who gave "clear" opinions [5] on whether Shea's employment aggravated her condition: Drs. Cole, Blocher, Beard, and Smith.[6] Looking "only to the basis for their opinions, rather than to the substance," the ALJ gave greatest weight to the opinions of Dr. Smith and Dr. Beard. The ALJ explained:

Dr. Cole's and Dr. Blocher's opinions were less persuasive than the opinions of Dr. Smith and Dr. Beard: neither Dr. Cole nor Dr. Blocher had examined Ms. Shea, neither had special expertise beyond their general medical training relevant to Ms. Shea's condition and symptoms, neither

was shown to have had substantial recent experience in direct patient care, and both were retained by the party offering their testimony for the purpose of this administrative proceeding.

The ALJ then evaluated the opinions of Drs. Beard and Smith. The ALJ noted that Dr. Beard's opinion was that Shea's employment did not aggravate her condition, but the ALJ discounted this testimony because it did "not appear that Dr. Beard applied the [correct] legal standard." Dr. Beard's conclusion appeared to be based on a belief that sitting had to aggravate the underlying condition; but, as the ALJ recognized, "for purposes of occupational disability benefits an 'aggravation' includes increased pain, even if there is no change in the underlying physical condition." [7]

Dr. Smith's testimony, on the other hand, supported the conclusion that prolonged sitting aggravated Shea's pain, even if there was no change in the underlying condition. As a result, the ALJ concluded that the preponderance of the "more persuasive medical opinion testimony" supported the finding that Shea's working conditions contributed to her disabling pain. But the ALJ also noted that Dr. Smith testified that prolonged sitting only aggravated Shea's symptoms by five to ten percent, and the ALJ concluded: "[I]t is not inherently unreasonable to conclude that 5 to 10 percent is not a substantial proportion of a whole." On this basis, the ALJ decided that the medical testimony did not establish that Shea's employment was a substantial factor in causing her disabling pain.

The ALJ also evaluated the non-medical testimony. First, the ALJ observed that the evidence showed Shea's symptoms substantially worsened during the time she was employed by the State, but that "Ms. Shea herself ... has described her chronic pain syndrome as a progressive condition that became increasingly problematic over time as

---

**5.** The ALJ recognized that Dr. Gevaert also expressed an opinion on this issue, but the ALJ found that "it is unclear what [Dr. Gevaert] meant to say."

**6.** Drs. Smith, Beard, and Blocher testified at the hearing. Dr. Cole did not testify, but the ALJ

still considered his opinion based on Dr. Cole's written reports.

**7.** *Hester v. State, Pub. Emps.' Ret. Bd.,* 817 P.2d 472, 476 n. 7 (Alaska 1991).

a result of the ordinary activities of daily life, such as sitting, standing and walking." Second, the ALJ emphasized that Shea's "own reports of pain during her first five years of [state] employment were no more frequent than they had been previously," and that Shea "did not tell a doctor that sitting was triggering pain until 1999, and she mentioned sitting only intermittently after that until her claim for occupational disability benefits had been denied." The ALJ observed: "If prolonged sitting at the office was a *substantial* factor in her chronic pain syndrome, it is reasonable to expect that Ms. Shea would have told at least one of her doctors that prolonged sitting was a trigger for her pain at some point prior to 1999 and would regularly have reported sitting as an aggravating factor ... before she quit working in 2001."

The ALJ concluded that Shea did not prove by a preponderance of the evidence that her employment was a substantial factor in her disability because "many of the ordinary activities of everyday life were pain triggers, and ... if sitting at work was an 'aggravating factor,' it was no more or less so than anything else Ms. Shea was doing during the period of her employment."

#### 2. Appeal to the superior court

Shea appealed the ALJ's decision to the superior court, where it was affirmed.[8] The superior court observed that "[w]hile Shea correctly cites the fact that this court cannot reweigh the evidence or choose between competing theories, that is exactly what she is asking this court to do." The superior court also explained that the ALJ's reference to Dr. Smith's five to ten percent estimate "does not mean that [the ALJ] was substituting the legal standard[,] it just shows that he

used the 5–10% as one component in his analysis." According to the superior court, the other factors the ALJ considered included: (1) that Shea had been treated by doctors for many years before mentioning that sitting at work increased her pain; (2) that Shea only identified her employment as a specific cause of her pain after her claim for occupational disability benefits had been denied; and (3) that many activities and circumstances unrelated to her work also aggravated her condition.

Shea appeals.

### III. STANDARD OF REVIEW

When the superior court is acting as an intermediate court of appeal in an administrative matter, we independently review the merits of the agency or administrative board's decision.[9] We review an administrative board's factual findings "to determine whether they are supported by substantial evidence," which is defined as "such relevant evidence as a reasonable mind might accept as adequate to support the Board's conclusion."[10] "We determine only whether such evidence exists and do not choose between competing inferences or evaluate the strength of the evidence. In determining whether evidence is substantial, however, we must take into account whatever in the record fairly detracts from its weight."[11]

The conclusion that a work-related injury or hazard is not a substantial factor in causing an employee's disability must be supported by substantial evidence.[12] It is a legal question whether the quantum of evidence is substantial enough to support such a conclusion in the contemplation of a reasonable mind.[13]

---

8. Shea's appeal to the superior court was initially rejected as untimely. We ruled that Shea's attorney had good cause for the delay and remanded the matter to the superior court to hear the appeal. *Shea v. State, Dep't of Admin., Div. of Ret. and Benefits*, 204 P.3d 1023, 1025 (Alaska 2009).

9. *See Hester*, 817 P.2d at 474 (citing *Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.*, 746 P.2d 896, 903 (Alaska 1987)).

10. *Lopez v. Adm'r, Pub. Emps.' Ret. Sys.*, 20 P.3d 568, 570 (Alaska 2001) (citing *Hester*, 817 P.2d at 476).

11. *Id.* (internal quotation marks and citations omitted).

12. *Id.* at 571.

13. *Municipality of Anchorage, Police & Fire Ret. Bd. v. Coffey*, 893 P.2d 722, 726 (Alaska 1995) (citing *Land & Marine Rental Co. v. Rawls*, 686 P.2d 1187, 1188–89 (Alaska 1984)).

## IV. DISCUSSION

### A. The Standard For Occupational Disability Benefits

#### 1. The statutory requirements for occupational disability benefits

Alaska Statute 39.35.410(a) provides: "An employee is eligible for an occupational disability benefit if employment is terminated because of a total and apparently permanent occupational disability...." Alaska Statute 39.35.680(27) defines the term "occupational disability" as:

[A] physical or mental condition that, in the judgment of the administrator, presumably permanently prevents an employee from satisfactorily performing the employee's usual duties for an employer or the duties of another comparable position or job that an employer makes available and for which the employee is qualified by training or education; however, the proximate cause of the condition must be a bodily injury sustained, or a hazard undergone, while in the performance and within the scope of the employee's duties and not the proximate result of the wilful negligence of the employee.

▆▆▆▆ "Occupational disability benefits ... serve a distinct function and are not intended to replicate the protection given by the workers' compensation system." [14] Therefore, unlike the presumption of compensability in workers' compensation cases, an employee claiming occupational disability benefits bears the burden of proving by a "preponderance of the evidence that the disability was proximately caused by an injury which occurred in the course of employment." [15]

▆▆▆▆ "If one or more possible causes of a disability are occupational, benefits will be awarded where the record establishes that the occupational injury is a substantial factor in the employee's disability regardless of whether a nonoccupational injury could independently have caused disability." [16] The underlying injury need not be caused by the employment to receive occupational disability benefits. We have explained that "[i]t is basic that an accident which produces injury by precipitating the development of a latent condition or by aggravating a preexisting condition is a cause of that injury." [17] This is because *"increased pain* or other symptoms can be as disabling as deterioration of the underlying disease itself." [18]

#### 2. The substantial factor causation standard

The ALJ concluded that Shea established sitting contributed to her disabling pain, but that she did not prove her employment was a substantial factor in causing this disability. There were two reasons for this conclusion: (1) Dr. Smith testified that sitting only aggravated her condition by five to ten percent; and (2) sitting did not contribute to her pain any more or less than her other activities of daily life. Shea argues the ALJ used the wrong legal threshold to determine that prolonged sitting was not a substantial factor in causing her disability. She claims she met the burden of proving that her employment was a substantial factor simply by "demonstrating that prolonged sitting at work aggravated her symptoms."

One of the primary issues in this case is whether the definition of "substantial factor" requires Shea's employment to have been *the* substantial cause of her injury—i.e., the sole or predominant cause—or whether it must only have been *a* substantial cause of her injury. We have previously adopted the substantial factor causation standard in occupational disability benefits cases, but we have not yet had the occasion to define the term "substantial factor" for purposes of these cases. We have defined the term in more

14. *State, Pub. Emps. Ret. Bd. v. Cacioppo*, 813 P.2d 679, 682 (Alaska 1991).

15. *Id.* at 682–83.

16. *Id.* at 683.

17. *Hester v. State, Pub. Emps.' Ret. Bd.*, 817 P.2d 472, 475 (Alaska 1991).

18. *Id.* at 476 n. 7 (emphasis added) ("[W]e reject the distinction ... between worsening of the underlying disease process and worsening of the symptoms of a disease.").

detail in other contexts, such as negligence claims and workers' compensation cases and we look to these other contexts to guide our definition of "substantial factor" here.

### i. Employment need only be *a* substantial factor in causing the disability, not *the* substantial factor.

We first had the opportunity to define "substantial factor" in the realm of tort law. For example, the passenger-plaintiff in *State v. Abbott* was harmed in an automobile accident and sued the State claiming that it had been negligent in the design, construction, and maintenance of the road and in failing to post signs warning of the hazardous condition of a curve.[19] The State claimed the automobile driver had been negligent, and therefore the road maintenance was not a proximate cause of plaintiff's injury.[20] In rejecting the State's argument, we adopted the definition of "substantial factor" from the Restatement (Second) of Torts. It provides:

> In order that a negligent actor may be liable for harm resulting to another from his conduct, it is only necessary that it be a legal cause of the harm. It is not necessary that it be the cause, using the word "the" as meaning the sole *and even the predominant cause.* The wrongful conduct of a number of third persons may also be a cause of the harm, so that such third

persons may be liable for it, concurrently with the actor.[21]

We further explained that "it [is] proper to find that a defendant's negligent conduct was the 'legal cause' of plaintiff's injury if the negligent act 'was more likely than not a substantial factor in bringing about (plaintiff's) injury.'"[22] In other words, the actor's conduct need not be "the" legal cause of an injury for liability to attach to the actor; it is only necessary that the actor's conduct be "a" legal cause.[23] Because the State's negligence was a proximate cause of the accident, we concluded in *Abbott* that the State could be liable, regardless of the driver's negligence.[24]

We have adopted this same definition of "substantial factor" in workers' compensation cases.[25] Our initial use of the "substantial factor" causation standard in workers' compensation cases arose from the need to define which employer should be responsible for an employee's injury when an injury becomes progressively worse over a series of jobs. To make this determination, we adopted the "last injurious exposure rule," which "imposes full liability on the employer at the time of the most recent injury that bears a causal relation to the disability."[26] This rule requires two determinations: "(1) whether employment with the subsequent employer 'aggravated, accelerated, or combined with' a pre-existing con-

19. 498 P.2d 712, 726 (Alaska 1972).

20. *Id.* at 726–27.

21. *Id.* at 727 (citing Restatement (Second) of Torts § 430, cmt. d at 428 (1965) (emphasis added)).

22. *See id.* at 726 (quoting *City of Fairbanks v. Nesbett*, 432 P.2d 607, 610–11 (Alaska 1967)).

23. *See id.* (citing *Nesbett*, 432 P.2d at 610–11).

24. *Id.* at 727–28.

25. *See, e.g., Thurston v. Guys With Tools, Ltd.*, 217 P.3d 824, 828 (Alaska 2009); *Doyon Universal Servs. v. Allen*, 999 P.2d 764, 770 (Alaska 2000); *Fairbanks N. Star Borough v. Rogers & Babler*, 747 P.2d 528, 532 (Alaska 1987) (citing *Abbott*, 498 P.2d at 726–27).

26. *Ketchikan Gateway Borough v. Saling*, 604 P.2d 590, 595 (Alaska 1979) (citing 4 A. Larson,

*The Law of Workmen's Compensation* § 95.12 (1979)). Our decision today should not be read as an adoption of the last injurious exposure rule for occupational disability benefits cases. In *State, Pub. Empls. Ret. Bd. v. Cacioppo* we expressly rejected such an application of that rule, explaining:

> The [trial] court's emphasis on the event nearest in time to the disability is misplaced. If this test were applied, once the employee met the minimal requirement of establishing that the injury occurred during the course of employment, the burden would be effectively shifted to the employer to establish that the more remote occurrence was in fact the cause of the employee's injury. Thus, a presumption similar to the last injurious exposure rule would be created for occupational disability claims.

813 P.2d 679, 683 n. 4 (Alaska 1991). We cite to the last injurious exposure rule here solely to help explain our definition of "substantial factor."

dition; and, if so, (2) whether the aggravation, acceleration or combination was a 'legal cause' of [the] disability, i.e., 'a substantial factor in bringing about the harm.'"[27] In *Ketchikan Gateway Borough v. Saling,* the Borough argued that we should limit application of the last injurious exposure rule to cases where "the last injurious exposure is the 'substantial cause' in producing disability."[28] We rejected that position and explained that liability should be imposed whenever "employment is established as a causal factor in the disability.... [A] causal factor is not a legal cause of the injury unless it is a substantial factor in bringing about the harm."[29] We concluded that the employee "need only have shown that employment with the [B]orough was *a* legal cause of his disability," not *the* legal cause.[30] We later elaborated on this definition in *Fairbanks North Star Borough v. Rogers and Babler* and held that an employment-related "act, omission, or force" will not be a substantial factor unless "reasonable persons would regard this act, omission, or force as a cause and attach responsibility to it."[31]

 In *State, Public Employees Retirement Board v. Cacioppo,* we explained that "workers' compensation and occupational disability benefits claims draw on common principles and raise similar issues," and we incorporated the "substantial factor" causation standard into our occupational disability

benefits jurisprudence.[32] We clarify here that the same definition of "substantial factor" applies in the occupational disability context;[33] Shea must show that prolonged sitting at work was *a* substantial factor in causing her disability, such that reasonable persons would recognize the employment as a legal cause of her injury.

### ii. The "substantial factor" test requires both actual and proximate cause.

 The fact that multiple causes contribute to an injury does not automatically preclude recovery. The substantial factor test requires a claimant to demonstrate that: "(1) the disability would not have happened 'but for' an injury sustained in the course and scope of employment; and (2) reasonable persons would regard the injury as a cause of the disability and attach responsibility to it."[34] The first element is commonly referred to as "cause-in-fact" and the second as "proximate cause."[35]

 The cause-in-fact or "but-for" test only requires a showing that the plaintiff's damages would not have been incurred "but for" the complained-of conduct, in this case the conditions of Shea's employment.[36] But not every cause results in liability or the award of benefits. "Once it has been established that the defendant's conduct has in fact been one of the causes of the plaintiff's injury, there remains the question whether

---

27. *United Asphalt Paving v. Smith,* 660 P.2d 445, 447 (Alaska 1983) (quoting *Saling,* 604 P.2d at 590).

28. 604 P.2d at 597.

29. *Id.* at 597–98.

30. *Id.* at 598 (emphasis added).

31. 747 P.2d 528, 532 (Alaska 1987).

32. 813 P.2d 679, 683 (Alaska 1991).

33. In 2005 the legislature amended the causation standard in workers' compensation cases from "a substantial factor" to "the substantial cause." *See* ch. 10, § 9, FSSLA 2005, *codified at* AS 23.30.010(a); *see also Rivera v. Wal–Mart Stores, Inc.,* 247 P.3d 957, 959 n. 2 (Alaska 2011) (citing *Pietro v. UNOCAL Corp.,* 233 P.3d 604, 616 n. 31 (Alaska 2010)). That amendment does not change our analysis here. The legislature did not amend the occupational disability statute to

require employment to be "the substantial cause," even though we previously adopted the substantial factor test for occupational disability cases. *Compare* AS 23.30.010 (workers' compensation) *with* AS 39.35.410 *and* AS 39.35.680(27) (occupational disability benefits). We assume the legislature is aware of the common law when it passes legislation. *See Young v. Embley,* 143 P.3d 936, 945 (Alaska 2006). Further, the State does not argue that the amended causation standard applies here; it asserts that Shea did not prove prolonged sitting at work was a *substantial* factor in causing her disability.

34. *Doyon Universal Servs. v. Allen,* 999 P.2d 764, 770 (Alaska 2000) (internal citations omitted); *see also Thurston v. Guys With Tools, Ltd.,* 217 P.3d 824, 828 (Alaska 2009).

35. *Rogers & Babler,* 747 P.2d at 532.

36. *Id.* at 533.

the defendant should be legally responsible for the injury."[37] To satisfy the substantial factor requirement, a claimant must prove that her employment was "so important in bringing about the injury that reasonable [persons] would regard it as a cause and attach responsibility to it."[38] We have described this requirement as asking "whether the conduct has been so significant and important a cause that the defendant should be legally responsible."[39]

## B. The ALJ's Decision

The ALJ concluded that Shea did not prove that prolonged sitting at work was a substantial factor in causing her disability. Several doctors offered opinions regarding whether the prolonged periods Shea spent sitting were a substantial factor in causing her chronic pain, but the ALJ found three of those opinions unpersuasive and concluded that the fourth doctor, Dr. Smith, merely testified that prolonged sitting could aggravate Shea's symptoms. This description of Dr. Smith's testimony is not supported by the record.

### 1. The ALJ's description of Dr. Smith's testimony is not supported by substantial evidence.

■■■■ The ALJ considered the opinions of the four doctors who clearly articulated whether prolonged periods of sitting while employed by the State were a substantial factor in causing Shea's disabling chronic pain: Drs. Blocher, Cole, Beard, and Smith. The ALJ found the opinions of Drs. Blocher and Cole less persuasive because neither had examined Shea, neither had special expertise beyond their general medical training relevant to Shea's condition and symptoms, neither was shown to have had substantial re-

cent experience in direct patient care, both were retained by the party offering their testimony for the purpose of the administrative hearing, and both had incorrectly characterized other doctors' opinions in their reports. The ALJ also discounted Dr. Beard's testimony because:

> [It did] not appear that Dr. Beard applied the legal standard that applies in occupational disability benefit cases. She defined an 'aggravation' as a 'permanent worsening or flare [up]' of the underlying physical condition. However, for purposes of occupational disability benefits, an 'aggravation' includes increased pain, even if there is no change in the underlying physical condition.

The ALJ considered that Dr. Smith had personally examined Shea, had experience treating patients with similar conditions, believed that Shea's consultation was not just for use in the proceeding, and applied the correct legal standard. The ALJ concluded that Dr. Smith's opinion "supports the conclusion that for an individual with a pre-existing ilioinguinal neuralgia, prolonged sitting could increase the level of pain for that individual, even if there was no change in the underlying [condition]." But the ALJ continued: "Dr. Smith's opinion, while persuasive as an expression of medical opinion, offers only limited support for the claim that [Shea's] working conditions were a substantial factor in her disability: Dr. Smith testified that prolonged sitting could aggravate her symptoms, but only by 5 to 10 percent."

On appeal we do not re-weigh the evidence or choose between competing inferences, but we do analyze the record in its entirety to ensure that the ALJ's factual findings are supported by substantial evidence.[40] Here,

---

**37.** W. KEETON, D. DOBBS, R. KEETON, & D. OWEN, PROSSER AND KEETON ON THE LAW OF TORTS § 42, at 272–73 (5th ed. 1984).

**38.** *See Vincent by Staton v. Fairbanks Mem'l Hosp.*, 862 P.2d 847, 851–52 (Alaska 1993) (quoting *State v. Abbott*, 498 P.2d 712, 727 (Alaska 1972)).

**39.** *Id.* at 851.

**40.** *See Lopez v. Adm'r, Pub. Emps.' Ret. Syst.*, 20 P.3d 568, 570 (Alaska 2001). On the surface,

there appears to be tension between the principle that we do not re-weigh the evidence on appeal and our duty to determine whether findings are supported by substantial evidence, but the two standards are reconcilable. As one leading administrative law treatise explains, although the substantial evidence test is highly deferential, the test "precludes affirmance of an agency finding in the extreme case where the evidence that detracts from the finding is dramatically disproportionate to the evidence that supports the finding, e.g., a finding based on the testimony of one obviously biased witness that is contradicted by

the ALJ's conclusion that "Dr. Smith testified that prolonged sitting *could* aggravate [Shea's] symptoms" is not supported by the record. Dr. Smith actually testified that it was "more likely than not" that Shea's disability was aggravated by prolonged sitting at work. He defined "more likely than not" as 51 percent. In other words, Dr. Smith testified that the evidence showed prolonged sitting at work likely *did* aggravate Shea's condition, not that it could have. The summary of Dr. Smith's testimony in the administrative decision is not supported by the record.

## 2. The ALJ must reevaluate the evidence in light of the "substantial factor" causation standard.

Shea claims she met her burden of proving causation simply by demonstrating that employment aggravated her chronic pain. She argues that "[t]he evidence before the ALJ proved that the demands of [her] work materially and substantially aggravated her condition." And she emphasizes the ALJ's statement that, "It is clear from the testimony and the medical records that Ms. Shea's symptoms substantially worsened during the time that she was employed by the [S]tate." Although the ALJ found that Shea's pain worsened during the time she was employed by the State, it does not necessarily follow that her employment was the cause. Shea's pain may have worsened over this period for a variety of reasons, such as new or increased activities outside of her job or as the natural progression of her underlying condition. Shea's conclusion regarding causation

does not follow from the mere fact that her condition worsened. The State argues that prolonged sitting was not a substantial factor because "sitting at work was no more of an aggravating factor" than any of the other activities of her everyday life.

The ALJ found:

Ms. Shea did not tell a doctor that sitting was triggering pain until 1999, and she mentioned sitting only intermittently after that until her claim for occupational disability benefits had been denied. If prolonged sitting at the office was a *substantial* factor in her chronic pain syndrome, it is reasonable to expect that Ms. Shea would have told at least one of her doctors that prolonged sitting was a trigger for her pain at some point prior to 1999 and would regularly have reported sitting as an aggravating factor after she began her extensive search for pain relief, before she quit working in 2001.

The ALJ went on to conclude:

[Shea] reported that her pain was made worse by sitting, standing, walking, and physical activity generally. Nothing in that recitation or in the medical records generated before she had to stop working suggests that prolonged sitting at the office was a particular source of pain in comparison to other factors. To the contrary, the medical records both preceding and following the date of disability indicate that many of the ordinary activities of everyday life were pain triggers, and that if sitting at work was an "aggravating factor," it was no more or less so than any-

the testimony of multiple unbiased witnesses or powerful documentary or circumstantial evidence." RICHARD PIERCE, ADMINISTRATIVE LAW TREATISE 979–80 (Wolters Kluwer Law & Bus., 5th ed. 2010).

The United States Supreme Court has also explained how to reconcile the apparent tension between the two standards:

To be sure, the requirement for canvassing "the whole record" in order to ascertain substantiality does not furnish a calculus of value by which a reviewing court can assess the evidence.... Nor does it mean that even as to matters not requiring expertise a court may displace the Board's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo. [But under the

substantial evidence test,] a reviewing court is not barred from setting aside a Board decision when it cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to the Board's view.

*Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951). The substantial evidence test is highly deferential, but we still review the entire record to ensure that the evidence *detracting* from the agency's decision is not *dramatically* disproportionate to the evidence supporting it such that we cannot "conscientiously" find the evidence supporting the decision to be "substantial."

thing else Ms. Shea was doing during the period of her employment.

The ALJ's emphasis on the word "substantial" might suggest that he did not find sitting to be a *substantial* cause, or one to which reasonable people would attach responsibility. This is also suggested by the ALJ's conclusion that prolonged sitting was "not of particular causal significance with respect to [Shea's] chronic pain syndrome." On the other hand, the ALJ's finding that prolonged sitting was "no more or less [of a contributor] than anything else Ms. Shea was doing during the period of her employment" implies that the ALJ thought Shea was required to show sitting was *the* substantial factor of her disability—meaning more of a contributor than her other daily activities. And the ALJ's conclusion that Dr. Smith's estimated five to ten percent contribution "is not a substantial proportion of a whole" could mean the ALJ ruled that five to ten percent is not *substantial* (i.e., reasonable persons would not regard the injury as a cause of the disability or attach responsibility to it), or it could mean the ALJ required sitting to be more than 51 percent of the total causation before awarding benefits (i.e., *the* substantial factor).

 In Alaska, a prolonged work-related factor could contribute to a person's disability in equal proportions to her other daily activities and still be considered "a substantial factor"; even a five to ten percent contribution could suffice if "reasonable persons would regard the injury as a cause of the disability and attach responsibility to it." [41]

Given the ALJ's findings, we must remand this case to the superior court with instructions to remand to the ALJ. The ALJ should reconsider his decision in light of the causation standard explained in this opinion and clarify whether Shea's prolonged sitting at work was *a* substantial factor in causing her disability. The ALJ may reevaluate the evidence or allow for supplemental evidence and hearings, as he deems necessary.

**41.** *Doyon Universal Servs. v. Allen,* 999 P.2d 764, 770 (Alaska 2000).

## V. CONCLUSION

For the reasons above, we REVERSE the superior court's decision upholding the ALJ's decision and REMAND for proceedings consistent with this opinion.