*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| ALVIN KENNEDY and ELIEZER FELICIANO,<br><br>          Appellants,<br><br>v.<br><br>THE ANCHORAGE POLICE & FIRE RETIREMENT SYSTEM; THE BOARD OF TRUSTEES, ANCHORAGE POLICE & FIRE RETIREMENT SYSTEM, in its official capacity; and EDWARD JARVIS, as director of the Anchorage Police & Fire Retirement System, in an official capacity,<br><br>          Appellees. | Supreme Court Nos. S-17553/17684 (Consolidated)<br><br>Superior Court No. 3AN-18-05165 CI<br><br>O P I N I O N<br><br>No. 7528 – May 7, 2021 |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Andrew Guidi, Judge.

Appearances: Michael W. Flanigan, Flanigan & Bataille, Anchorage, for Appellants. Matthew Singer and Lee C. Baxter, Holland & Knight LLP, Anchorage, and Robert D. Klausner, Klausner, Kaufman, Jensen & Levinson, Plantation, Florida, for Appellees.

Before: Bolger, Chief Justice, Winfree, Maassen, Carney, and Borghesan, Justices.

CARNEY, Justice.

## I.     INTRODUCTION

Two police officers retired from the Anchorage Police Department (APD) due to discrimination and retaliation. Years later, a jury found that they had been constructively discharged and awarded them lost past wages and benefits. The officers requested that the Anchorage Police and Fire Retirement System (APFRS) increase their retirement benefits based on the award of lost wages. When the APFRS Board denied their request, they appealed to the superior court. The superior court affirmed the Board's decision and awarded it attorney's fees.

The officers appeal the court's decision denying them an increase in retirement benefits, arguing that the Anchorage Municipal Code requires a recalculation of benefits. They also appeal the attorney's fee award as unreasonably high. Because the Anchorage Municipal Code does not permit the requested increase in retirement benefits, we affirm the superior court's order denying the officers' administrative appeal. Because the superior court did not abuse its discretion when it awarded fees, we also affirm the attorney's fee award.

## II.    FACTS AND PROCEEDINGS

### A.     Facts And Administrative Case

Alvin Kennedy and Eliezer Feliciano are retired members of APD. In 2009, while still in active service, both Kennedy and Feliciano filed discrimination complaints with the Municipality of Anchorage. A year later they filed complaints in the superior court. In 2011 Kennedy and Feliciano both resigned and began withdrawing retirement pay from APFRS.

In March 2017, after lengthy proceedings including an interlocutory appeal to this court,[1] a jury found that the Municipality had constructively discharged Kennedy and Feliciano by making their working conditions intolerable.[2] The jury awarded past lost wages and benefits in the amount of $380,000 to Kennedy and $358,000 to Feliciano.[3] The jury also awarded each of them $70,304 in future lost wages and benefits.[4] Kennedy and Feliciano argue that these damages awards represent 6.29 years' worth of compensation for Kennedy and 6.17 years' worth of compensation for Feliciano.

The APFRS plan is a defined-benefit plan described in Anchorage Municipal Code (AMC) Chapter 3.85. APFRS has three types of plans; Kennedy and Feliciano are both Plan III members. As Plan III members, their retirement benefits are calculated "at the rate of two and one-half percent of final average compensation multiplied by the number of years of credited service."[5] Thus, the relevant factors in determining a member's retirement benefits are (1) years of credited service, and (2) final average compensation.

---

[1] *Kennedy v. Municipality of Anchorage*, 305 P.3d 1284 (Alaska 2013).

[2] An employee is constructively discharged when "an employer makes working conditions so intolerable that the employee is forced into an involuntary resignation." *Charles v. Interior Reg'l Hous. Auth.*, 55 P.3d 57, 60 (Alaska 2002) (quoting *Cameron v. Beard*, 864 P.2d 538, 547 (Alaska 1993)).

[3] "Past lost wages and benefits" refers to lost wages and benefits before January 30, 2017, the first day of the jury trial. "Future lost wages and benefits" refers to lost wages and benefits after January 30, 2017.

[4] The jury also awarded each plaintiff non-economic damages, which are not at issue here.

[5] AMC 03.85.070(A).

Following the jury award, Kennedy and Feliciano wrote to Edward Jarvis, the director of APFRS,[6] seeking an "enhancement to [their] retirement benefits based on the jury's award and the court order." They argued that the Board was required under AMC 03.85.050(B) to recalculate their retirement benefits based on the damages award.[7] Jarvis wrote back, denying their request and informing them of their right to appeal his decision to the full Board. Jarvis stated that they were not eligible for recalculation because they were prohibited from receiving retirement benefits and service credits at the same time. He also pointed out that the verdict did not distinguish between lost wages and benefits, making the determination of service credits based on lost wages impossible.

After several months of correspondence between them failed to change either party's position, Kennedy and Feliciano appealed to the full APFRS Board. The Board denied the appeal, finding that granting their request to recalculate "would result in [Kennedy and Feliciano] receiving both a pension payment and a salary payment" at the same time in violation of both AMC Chapter 3.85 and the Internal Revenue Code. The Board offered Kennedy and Feliciano the opportunity to correct the problem by "a suspension of future benefits equal to the amount of retirement benefits received" but noted that Kennedy and Feliciano seemed uninterested in such a settlement. The Board stated that it "is the final authority . . . of all matters arising under AMC Chapter 3.85"

---

[6] The appellees in this case are APFRS; the Board of APFRS; and Edward Jarvis, as director of APFRS; we refer to them collectively as the Board.

[7] It is not clear from the initial letter whether Kennedy and Feliciano sought a recalculation of their years of credited service, their final average compensation, or both. In a later letter from their attorney to Jarvis, they sought an increase in their years of credited service.

and its decisions are "final, binding and conclusive on all parties." The letter did not inform Kennedy and Feliciano of their right to an administrative appeal.

### B. Administrative Appeal

Kennedy and Feliciano sued the Board in superior court in March 2018. The initial complaint was not filed as an administrative appeal. In early April the Board moved to treat the complaint as a notice of appeal. Kennedy and Feliciano then moved to amend their complaint to include grounds for administrative appeal. The court granted the Board's motion to treat the complaint as a notice of appeal and denied Kennedy and Feliciano's motion to amend as moot.

In the administrative appeal, Kennedy and Feliciano argued that AMC 03.85.050 required the Board to recalculate their retirement benefits to account for retroactive compensation from their lawsuit. The superior court affirmed the Board's decision, holding that Kennedy and Feliciano could not receive increased retirement benefits because AMC Chapter 3.85 "expressly prohibits a member from earning service credits concurrently with the distribution of a retirement benefit." Kennedy and Feliciano appeal, arguing that the superior court erred by failing to order the Board to recalculate their retirement benefits.

### C. Attorney's Fees Dispute

The Board moved for an award of 20% of its attorney's fees and full costs under Alaska Appellate Rules 508(e)(4) and 508(d). The Board sought $20,007.06 in attorney's fees (based upon $100,035.33 in total fees) and $5,519.99 in costs. Kennedy and Feliciano opposed, arguing that counsel for the Board billed an unreasonable number of hours and that certain costs were not permitted by statute. The Board conceded that 3.3 hours of work should be subtracted from its fee request but argued that the hours spent on the case were otherwise not excessive.

The superior court awarded the Board $18,000 in attorney's fees and $4,279.99 in costs. The court explained its decision to deny $1,240 in costs for "miscellaneous online Westlaw legal research in preparation for hearing." However, it did not explain its reduction of $2,007.06 from the requested attorney's fee award beyond noting in the order that it was awarding fees incurred "necessarily and reasonably."

Kennedy and Feliciano appeal the award of attorney's fees, arguing that the amount billed was excessive and fees should be limited to the amount their attorney billed them. They do not appeal the award of costs.

We consolidated the two appeals.[8]

## III.   STANDARD OF REVIEW

"When the superior court is acting as an intermediate court of appeal in an administrative matter, we independently review the merits of the agency or administrative board's decision."[9] When interpreting "questions of law where no agency expertise is involved," we apply "the substitution of judgment standard."[10]   "The

---

[8]     *Kennedy v. Jarvis*, No. S-17553/17684 (Alaska Supreme Court Order, May 21, 2020).

[9]     *Davis Wright Tremaine LLP v. State, Dep't of Admin.*, 324 P.3d 293, 299 (Alaska 2014) (quoting *Shea v. State, Dep't of Admin., Div. of Ret. & Benefits*, 267 P.3d 624, 630 (Alaska 2011)).

[10]     *Id.* We use a four-part standard for appeals of administrative rulings: "(1) the 'substantial evidence test' for questions of fact, (2) the 'reasonable basis test' for questions of law involving agency expertise, (3) the 'substitution of judgment test' for questions of law involving no agency expertise, and (4) the 'reasonable and not arbitrary test' for review of administrative regulations." *Oels v. Anchorage Police Dep't Emp.'s Ass'n*, 279 P.3d 589, 595 (Alaska 2012) (quoting *ConocoPhillips Alaska, Inc. v. State, Dep't of Natural Res.*, 109 P.3d 914, 919 (Alaska 2005)). As both parties acknowledge,
(continued...)

'substitution of judgment' test is equivalent to de novo review and requires that we 'adopt the rule of law that is most persuasive in light of precedent, reason, and policy.' "[11]

We review an award of attorney's fees by a superior court acting as an intermediate appellate court for abuse of discretion.[12] "We will find an abuse of discretion when the superior court's award of attorney's fees is 'arbitrary, capricious, manifestly unreasonable, or improperly motivated.' "[13]

## IV. DISCUSSION

### A. The Superior Court Did Not Err When It Decided That Kennedy And Feliciano Are Not Entitled To Recalculation Of Retirement Benefits.

#### 1. Preliminary arguments

The Board makes two threshold arguments: that APFRS should not be bound by the judgment against the Municipality of Anchorage, and that Kennedy and Feliciano's claim is barred by quasi-estoppel. Both lack merit.

#### a. The Board is bound by the superior court judgment against the Municipality.

The Board argues that it should not be bound by the judgment in Kennedy and Feliciano's case against the Municipality of Anchorage because the Board was not a party to that case and is not in privity with the Municipality. But we already rejected

---

[10]    (...continued)
this case presents a question of law involving no agency expertise.

[11]    *Id.* (quoting *Kingik v. State, Dep't of Admin., Div. of Ret. & Benefits*, 239 P.3d 1243, 1248 (Alaska 2010)).

[12]    *Hodari v. State, Dep't of Corr.*, 407 P.3d 468, 471 (Alaska 2017) (noting that the same standard of review applies whether or not the superior court acts as intermediate appellate court).

[13]    *Id.* (quoting *Roderer v. Dash*, 233 P.3d 1101, 1106 (Alaska 2010)).

this argument in *Board of Trustees, APFRS v. Municipality of Anchorage*.[14] In that case, the Board sought compensation from the Municipality for "resulting adverse actuarial impact on [APFRS] when the Municipality of Anchorage settles a grievance."[15] One of the Board's arguments was that, because it was not a party to litigation between the Municipality and a police officer, it "should not be bound to absorb the actuarial impact from [the officer's] grievance."[16] We rejected that argument, reasoning that "the Board in fact agreed to the imposition of the . . . obligation because the contract between the parties, memorialized at AMC 3.85.050(B), sets forth the procedure for accounting for retroactive compensation in the event of a grievance."[17] The Board remains bound by its contract and by AMC 3.85.050(B)'s requirement to consider in its calculation any compensation paid as a result of a "court ordered judgment or settlement."[18] Because the Board's argument here is indistinguishable from the argument we rejected in *Board of Trustees, APFRS v. Municipality of Anchorage*, it is without merit.

---

[14]     144 P.3d 439, 447 (Alaska 2006).

[15]     *Id.* at 441.

[16]     *Id.* at 447.

[17]     *Id.*

[18]     AMC 3.85.050(B) ("Retroactive compensation, that meets the definition of compensation of this chapter, shall be considered by the board in the calculation of benefits if paid as a result of a grievance, arbitration award, collective bargaining agreement or court ordered judgment or settlement. However, any amounts awarded or paid as court costs, interest, attorney's fees, statutory penalties, punitive damages and any other type of retroactive compensation that does not meet the definition of compensation in this chapter shall be specifically excluded.").

### b. Kennedy and Feliciano's claim is not barred by quasi-estoppel.

The Board also argues that Kennedy and Feliciano's claim is barred by quasi-estoppel. "Quasi-estoppel 'precludes a party from taking a position inconsistent with one . . . previously taken where circumstances render assertion of the second position unconscionable.' "[19] Kennedy and Feliciano successfully argued that due to the collateral source rule their pension benefits could not be used to offset damages and no evidence of the pension benefits they were receiving could be presented to the jury. The collateral source rule excludes "evidence of other compensation on the theory that such evidence would affect the jury's judgment unfavorably to the plaintiff on issues of liability and damages."[20] The Board argues that because "[Kennedy and Feliciano] opposed making their pension benefits losses part of the damage calculation in their discrimination case," their "present assertion [is] indefensible."

Kennedy and Feliciano's collateral source argument is not inconsistent with their position in this case, let alone so inconsistent as to make their current position unconscionable. Their invocation of the collateral source rule to prevent an offset of damages in their trial against the Municipality is unrelated to their statutory interpretation argument here. The Board argues that Kennedy and Feliciano had "an opportunity to include pension benefits adjustments as part of the damage calculation . . . but chose to forego it." But the issue at trial was not whether pension benefits would be adjusted. Rather, the issue was whether Kennedy and Feliciano's receipt of pension benefits could

---

[19] *John's Heating Serv. v. Lamb*, 46 P.3d 1024, 1040 (Alaska 2002) (alteration in original) (quoting *Jamison v. Consolidated Util., Inc.*, 576 P.2d 97, 102 (Alaska 1978)).

[20] *Jones v. Bowie Indus., Inc.*, 282 P.3d 316, 326 (Alaska 2012) (quoting *Tolan v. ERA Helicopters*, 699 P.2d 1265, 1267 (Alaska 1985)).

be used to reduce their damages award. Because Kennedy and Feliciano did not take a prior inconsistent position, we reject the Board's quasi-estoppel argument.

## 2. Interpretation of AMC Chapter 3.85

The primary dispute in this case is how to interpret different sections of AMC Chapter 3.85; the main conflict is between AMC 03.85.050, which requires that jury awards be "considered by the board" as compensation; and AMC 03.85.070, which requires separation of service before a member can receive benefits. The intent behind Section .070 is to prevent the simultaneous receipt of retirement benefits and employment compensation, known as "double dipping." Section .050(B)-(C) of Chapter 3.85 reads:

> B.     **Retroactive compensation, that meets the definition of compensation of this chapter, shall be considered by the board in the calculation of benefits if paid as a result of a grievance, arbitration award, collective bargaining agreement or court ordered judgment or settlement.** However, any amounts awarded or paid as court costs, interest, attorney's fees, statutory penalties, punitive damages and any other type of retroactive compensation that does not meet the definition of compensation in this chapter shall be specifically excluded.
>
> C.     Active members may elect to have retroactive pay treated as compensation in the year in which paid or to have retroactive pay allocated to the pay periods where it would have been actually paid. The method chosen by the active member shall apply to all instances of eligible retroactive pay. **For retired members, retroactive pay shall be allocated to the pay periods where it would have been actually paid.**[21]

---

**21**     AMC 03.85.050(B)-(C) (emphasis added).

And Section .070(F)-(G) states:

> F.　　Unless otherwise required by law, **a member shall not receive a retirement benefit from the system at the same time that the member is accruing credited service in the system.** In the event that a retired member again accrues credited service, retirement benefits payable from the system shall be automatically suspended until such time as the accrual of service has ceased. Benefits shall be calculated on the basis of total credited service.
>
> G.　　**In order to be eligible to receive pension benefits from the system, a Plan III member must have a separation from service.**[22]

Kennedy and Feliciano argue that Section .050(B)-(C) entitles them to recalculation of their retirement benefits to account for the jury awards of lost past wages and benefits. Because Section .050(B) requires APFRS to consider retroactive compensation from a court ordered judgment in the calculation of retirement benefits, Kennedy and Feliciano argue that APFRS must recalculate their pensions to account for the award of lost pay for the six years between their constructive dismissal and the start of their trial. They point out that Section .050(C) expressly provides for allocation of pay for retired members and argue that this means the statute contemplates recalculation for members in their position. They also argue that the Board has previously included damages awards in its calculation of benefits and should do the same for them.[23]

The Board counters that Section .070(F) controls, prohibiting the Board from applying service credits to the lost wages for the period in which Kennedy and Feliciano were already drawing retirement benefits. It points out that statutes must be

---

[22]　　AMC 03.85.070(F)-(G) (emphasis added).

[23]　　*See Bd. of Trs., APFRS v. Municipality of Anchorage*, 144 P.3d 439, 444-45 (Alaska 2006) (describing occasions when retirement benefits were adjusted based on damages awards or settlements).

construed "as a whole, not in parts," and argues that Kennedy and Feliciano's reading would violate Section .070 as well as several terms defined in AMC 03.85.015. The Board acknowledges that it has included awards of back pay in its calculation of retirement benefits for other members. But it explains that in those cases the back pay was for "compensation during their pre-retirement working years." In contrast, factoring in back pay for periods in which Kennedy and Feliciano were already drawing retirement would amount to double dipping "contrary to the plain language of the municipal code and to the logic of a retirement system."

The key issue, then, is whether Section .050(B)-(C) creates an exception to Section .070(F)'s prohibition on receiving retirement benefits and service credits simultaneously and to Section .070(G)'s requirement that a Plan member have a separation from service before receiving retirement benefits.

### a. This case is not controlled by *Board of Trustees, APFRS v. Municipality of Anchorage*.

Kennedy and Feliciano argue that the issues in this case were settled by *Board of Trustees, APFRS v. Municipality of Anchorage*.[24] In that case, the Board sought compensation from the Municipality for its increased actuarial liability due to back pay awarded to police officers in two underlying cases.[25] One case concerned a police officer who was terminated, then reinstated with back pay and benefits.[26] The other concerned officers who had been underpaid when their hours were changed and

---

[24] *Id.*

[25] *Id.* at 444-45.

[26] *Id.* at 444.

were given overtime pay to make up for it.[27] Neither of the underlying cases involved compensation for a period in which the member was receiving retirement benefits. *APFRS v. Municipality* did not address whether Section .050(B) creates an exception to Section .070(F).

### b. Kennedy and Feliciano's damages award does not change their years of credited service.

Kennedy and Feliciano concede that the damages award does not change their final average compensation. They acknowledge that final average compensation is based on pay "prior to their last day of *actual work* prior to retirement" and therefore their post-retirement awards should not change their final average compensation. Because the only variables in the calculation of retirement benefits are final average compensation and years of credited service, the only issue is whether AMC Chapter 3.85 requires the Board to consider the damages award for purposes of determining years of credited service. We conclude that it does not. When read in light of the other provisions in Chapter 3.85, Section .050(B)-(C) does not require the Board to apply service credits to retroactive compensation for periods in which a member was already receiving retirement benefits.

Section .050(B) states, in relevant part: "Retroactive compensation, that meets the definition of compensation of this chapter, shall be considered by the board in the calculation of benefits if paid as a result of a . . . court ordered judgment . . . ."[28] The plain reading of Section .050(B) is that compensation under this section shall be treated the same as other compensation. The section classifies certain jury awards as "retroactive compensation" and requires that they "shall be considered by the board in

---

[27] *Id.*

[28] AMC 03.85.050(B).

the calculation of benefits." And Section .050(C) requires, "For retired members, retroactive pay shall be allocated to the pay periods where it would have been actually paid."[29] Neither section discusses service credits or claims to supersede other parts of the Chapter.[30] The most natural reading of these sections is that compensation earned under Section .050(B) must be considered the same as normal compensation and allocated as required by Section .050(C). There is nothing in Section .050 that suggests retroactive compensation earned under Section .050(B) should be excluded from the requirements that apply to normal compensation under the Chapter.

We have held that "[i]f one statutory 'section deals with a subject in general terms and another deals with a part of the same subject in a more detailed way, the two should be harmonized, if possible; but if there is a conflict, the specific section will control over the general.' "[31] Kennedy and Feliciano argue that these canons support their interpretation of AMC Chapter 3.85. But Section .070(F)[32] deals more specifically with Kennedy and Feliciano's situation than does Section .050(B)-(C). Section .050(B) merely requires that retroactive compensation like a jury award "be considered by the

---

**29**    AMC 03.85.050(C).

**30**    *See* AMC 03.85.050(B)-(C).

**31**    *Nelson v. Municipality of Anchorage*, 267 P.3d 636, 642 (Alaska 2011) (quoting *In re Hutchinson's Estate*, 577 P.2d 1074, 1075 (Alaska 1978)); *see also* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 180-88 (2012) (discussing harmonious-reading canon and general/specific canon).

**32**    AMC 03.85.070(F) states: "Unless otherwise required by law, a member shall not receive a retirement benefit from the system at the same time that the member is accruing credited service in the system. In the event that a retired member again accrues credited service, retirement benefits payable from the system shall be automatically suspended until such time as the accrual of service has ceased. Benefits shall be calculated on the basis of total credited service."

board in the calculation of benefits."[33] It does not require that retroactive compensation be considered for the purpose of calculating service credits when ordinary compensation would not be. Similarly, Section .050(C) explains how retroactive compensation should be allocated, but does not state that it should be treated differently than other compensation.

Section .070 addresses only the treatment of retirement benefits for members of Plan III. Section .070(F) prohibits a member from receiving "a retirement benefit from the system at the same time that the member is accruing credited service in the system." And Section .070(G) specifically requires that members be separated from service in order to receive retirement benefits.[34] Sections .050 and .070 can be harmonized by treating retroactive compensation earned under Section .050 the same as other compensation, which is subject to Section .070.

The plain reading of Section .050(B) treats compensation earned under Section .050(B) the same as normal compensation. This reading also allows Sections .070 and .050 to be read harmoniously. Although Kennedy and Feliciano's retroactive compensation must be considered under Section .050, it remains subject to the same requirements as other forms of compensation, including Section .070's prohibition on earning service credits while receiving retirement benefits. Because they were receiving retirement benefits during the years for which the jury awarded them retroactive compensation, that compensation cannot yield additional service credits. While Kennedy and Feliciano are entitled to a recalculation of benefits, the recalculation does not change their benefits because their retroactive compensation does not affect either their final

---

[33]     AMC 03.85.050(B).

[34]     AMC 03.85.070(G) states: "In order to be eligible to receive pension benefits from the system, a Plan III member must have a separation from service."

average compensation or their years of credited service. The superior court did not err when it decided that a recalculation of benefits would result "in no change."[35]

**B.      The Superior Court Did Not Abuse Its Discretion When It Awarded Attorney's Fees.**

Kennedy and Feliciano appeal the superior court's award of $18,000 in attorney's fees (based on $90,000 of actual attorney's fees) to the Board. Alaska Appellate Rule 508(e)(4) states that the prevailing party in an administrative appeal generally shall be awarded "20% of its actual attorney's fees that were necessarily incurred." Kennedy and Feliciano argue that the amount of time the Board's attorneys billed was excessive and certain hours were erroneously billed. They request that we limit the amount of attorney's fees "reasonably and necessarily incurred" by the Board's attorneys to $27,420, the amount billed by Kennedy and Feliciano's own attorney.[36]

**1.      Request to limit attorney's fees**

Kennedy and Feliciano first argue that the superior court abused its discretion by awarding an excessive amount of attorney's fees given the simple nature of the case. They request that this court cap the amount of fees "reasonably and necessarily incurred" by the Board at "the same amount that the Appellant[s'] attorney

---

[35]      Because we affirm the superior court's decision, we do not reach the Board's alternative argument that Kennedy and Feliciano's interpretation of the Anchorage Municipal Code is barred by the Internal Revenue Code.

[36]      Kennedy and Feliciano do not make a request for any other relief in their opening brief, although in their reply brief, they request in passing that the court should remand for an explanation of the attorney's fee award. Their argument on this issue is underdeveloped to the point that it is waived. *See Windel v. Carnahan*, 379 P.3d 971, 980 (Alaska 2016) ("[W]aiver due to inadequate briefing 'is not correctable by arguing the issue in a reply brief.' " (quoting *Adamson v. Univ. of Alaska*, 819 P.2d 886, 889 n.3 (Alaska 1991))).

charged his clients, which was $27,420."[37] Kennedy and Feliciano's argument that the attorney's fee award should be capped at the amount their attorney charged has no merit. We have previously held that "[a] large discrepancy between the fees incurred by each side may be evidence of unreasonableness, but it is not conclusive."[38] And we have upheld attorney's fee awards based on fees incurred by the prevailing party that were double or more the amount incurred by the non-prevailing party.[39] Such discrepancies may be the result of "over-preparation and over-billing by one set of attorneys," but may also be the result of "under-preparation and under-billing by the other set of attorneys" or unequal burdens in litigation.[40] To cap attorney's fees at the amount of fees incurred by the non-prevailing party would imply that attorney's fees must be equal, which would be inconsistent with our cases establishing that large discrepancies in attorney's fees are a relevant but not conclusive factor. Kennedy and Feliciano's request to cap the Board's attorney's fee award at the amount their own attorney charged is denied.

---

[37] This figure, when multiplied by the 20% fraction typically awarded in administrative appeals, would yield an attorney's fee award of $5,484. *See* Alaska R. App. P. 508(e)(4) (providing for award of 20% of actual attorney's fees necessarily incurred in most administrative appeals).

[38] *Nautilus Marine Enter., Inc. v. Exxon Mobil Corp.*, 332 P.3d 554, 560-61 (Alaska 2014) (quoting *N. Pac. Processors, Inc. v. City & Borough of Yakutat*, 113 P.3d 575, 589 (Alaska 2005)).

[39] *See id.* at 560 n.32 (upholding fee award when non-prevailing party alleged its fees were one-fifth the prevailing party's fees); *Oakly Enters., LLC v. NPI, LLC*, 354 P.3d 1073, 1084-85 (Alaska 2015) (upholding attorney's fee award when prevailing party's fees were approximately $245,000 and non-prevailing parties' fees were $75,000 each); *Gamble v. Northstore P'ship*, 28 P.3d 286, 289-90 (Alaska 2001) (upholding attorney's fee award when prevailing party's fees were double the amount of non-prevailing party's fees).

[40] *Gamble*, 28 P.3d at 290.

## 2. Reasonableness of APFRS's fees

In addition to arguing that fees should be capped, Kennedy and Feliciano object to specific items billed. The superior court has "broad discretion" to award fees and costs, and the party seeking to overturn attorney's fees bears "a heavy burden of persuasion."[41] Because the superior court did not abuse its discretion when it awarded attorney's fees, we uphold the attorney's fee award.

We have held that hours billed are unreasonable where they are "billed for activities that are not reasonably intended to advance the litigation," or "in excess of those [hours] that ought to be required to complete" a task.[42] Kennedy and Feliciano argue that APFRS's attorneys billed hours "for areas of research that have no application to the appeal" and "[r]esearch work which appears to have no relevance to this case." They claim the Board's attorneys "advanced many extraneous arguments . . . that were without merit or frivolous," including that the past wages award was not retroactive, lack of privity, quasi-estoppel, and that the Internal Revenue Code prohibited the court from granting the relief sought. In addition, Kennedy and Feliciano challenge as unreasonable billing for the following tasks: researching sovereign immunity, researching *Chevron* deference[43] and the Alaska Constitution, drafting a motion to file a "Petition for

---

[41] *Alaskasland.Com, LLC v. Cross*, 357 P.3d 805, 825 (Alaska 2015) (quoting *Schultz v. Wells Fargo Bank, N.A.*, 301 P.3d 1237, 1241 (Alaska 2013)).

[42] *Valdez Fisheries Dev. Ass'n, Inc. v. Froines*, 217 P.3d 830, 833 (Alaska 2009).

[43] *Chevron* deference, named for *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984), is an administrative law principle requiring the court to defer to an agency's interpretation of an ambiguous statute if the agency is tasked with administering the statute and the interpretation is permissible. *Id.* at 842-43.

Common Law Cert," and reviewing potential issues for an education program.[44] Kennedy and Feliciano also argue that the hours billed were excessive and duplicative.

But research on issues that were not ultimately pursued is not necessarily unreasonable. Research on sovereign immunity was relevant to Kennedy and Feliciano's claims against the Executive Director and the Board, even if sovereign immunity was not ultimately raised as a defense. Research on *Chevron* deference and the Alaska Constitution was not unreasonable; while the standard of review in this case is substitution of judgment, it was not unreasonable for the Board's attorneys to look into whether the agency might be due deference in interpreting its enabling statute. And while the Board's arguments concerning lack of privity, quasi-estoppel, and the Internal Revenue Code were unavailing, the superior court did not abuse its discretion in deciding that work spent on these arguments was reasonably intended to advance the litigation.[45]

The Board's attorney's fees may have been unusually high for an administrative appeal. But contrary to Kennedy and Feliciano's claim that it was a simple case, this was an unusually complex case and was further complicated by the fact that the parties first had to litigate whether the complaint was an administrative appeal.[46] Further, the superior court did reduce the amount of attorney's fees in its award. And the superior court's close attention to the costs in this case, as well as its decision to award a lower amount of attorney's fees than the amount requested, suggest that the superior

---

[44] The latter two billing items were already conceded by the Board before the superior court issued its order.

[45] *See Valdez Fisheries*, 217 P.3d at 833.

[46] The Board bears partial responsibility for the confusion about whether or not the case was an administrative appeal. Kennedy and Feliciano correctly point out that the Board failed to notify them of their right to appeal and disputed their right to appeal before the superior court.

court carefully evaluated the reasonableness of attorney's fees and costs.  Because Kennedy and Feliciano have failed to show that the superior court's partial award of attorney's fees was arbitrary, capricious, manifestly unreasonable, or improperly motivated, we affirm the award.

## V.     CONCLUSION

The superior court's decision denying a recalculation of benefits is AFFIRMED.  The superior court's decision awarding attorney's fees is AFFIRMED.